**UNITED STATES of America, Appellee,**

v.

**Wilbur Lee AUERBACH, Appellant.**

**No. 81–1737.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 12, 1982.

Decided July 6, 1982.

Certiorari Denied Oct. 12, 1982.
See 103 S.Ct. 219.

---

Kermit B. Anderson, U. S. Atty., Ronald M. Kayser, Asst. U. S. Atty., Des Moines, Iowa, for the U. S.

Philip F. Miller, Des Moines, Iowa, for appellant.

Before HEANEY, McMILLIAN and ARNOLD, Circuit Judges.

McMILLIAN, Circuit Judge.

Wilbur Lee Auerbach appeals from a final judgment entered in the District Court[1] for the Southern District of Iowa upon a jury verdict finding him guilty of engaging in the business of dealing in firearms without a license and conspiracy to engage in the business of dealing in firearms without a license in violation of 18 U.S.C. §§ 922(a)(1), 924(a), 926(1). The district court fined appellant $5000, suspended imposition of sentence on the conspiracy count and placed appellant on probation for three years. For reversal appellant argues that (1) evidentiary errors denied him a fair trial, (2) evidence of other crimes was improperly admitted, (3) the prosecutor's closing arguments were improper and prejudicial, (4) preindictment delay denied him due process, and (5) the government's conduct of the investigation constituted entrapment. For the reasons discussed below, we affirm the judgment of the district court.

In the spring of 1979 special agents of the Bureau of Alcohol, Tobacco and Firearms began an undercover investigation in the southern Iowa area. The original focus of the investigation was firearms violations, but the scope subsequently widened to include narcotics and stolen property. According to the government's theory of the case, appellant and his son Thomas Auerbach ran a firearms business from their gasoline service station in Atlantic, Iowa. From March through May 1979 the undercover agents purchased five firearms[2] from the Auerbachs and two firearms from a third party contacted by the Auerbachs. On one occasion the Auerbachs purchased half a case of "stolen" cigarettes from the undercover agents. The undercover agents testified that during the transactions at the service station the Auerbachs closed the door of the service bays and turned off the pumps and the lights.

The undercover agents maintained contact with the Auerbachs through the fall of 1980 but made no further purchases. In February 1981, almost two years after the firearms transactions, the case was referred to the United States attorney's office. The grand jury indicted appellant, Thomas Auerbach and Bradley Cramer for conspiracy and firearms violations in March 1981. The charges against Cramer were subsequently dismissed. Appellant and his son were codefendants. Appellant was found guilty of conspiracy to engage in the business of dealing in firearms without a license and engaging in the business of dealing in firearms without a license; Thomas was found guilty of conspiracy and two counts of unlawful possession of a firearm. Only Wilbur Auerbach has appealed.

Appellant first argues that certain evidentiary errors denied him a fair trial. Appellant argues that several comments made by the district court indicate confusion and uncertainty about the fairness of the trial. We must disagree. One remark was made during the hearing on post-trial motions; the district court acknowledged

---

1. The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

2. The undercover agents purchased a shotgun and a Japanese rifle on March 22, 1979; a revolver on March 24, 1979; and two rifles on May 11, 1979. On March 27 and 28, 1979, the undercover agents discussed buying the rifles.

On April 11, 1979 the undercover agents purchased two firearms from Bradley Cramer, who had been contacted by the Auerbachs. Cramer was indicted for firearms violations at the same time as the Auerbachs, but the government dismissed the counts against him for lack of evidence.

that there had been several problems during trial but then concluded that appellant had received a fair, although not perfect, trial. Another remark made by the district court referred to the defense counsel's delay and lack of specificity in making objections and the difficulty this caused the district court in conducting the trial.

Appellant also argues that the prosecutor improperly referred to the defendants collectively as "they" and failed to differentiate between them. We have examined the pages in the record cited by appellant. At one point the district court sustained a defense objection to the use of "they" and directed the witness and the prosecutor to differentiate between the defendants. At the other points the prosecutor or the witness indicated that "they" meant both Auerbachs, or the reference to both Auerbachs was clear from the context, or the use of the word "they" was not challenged.

■ Appellant also argues that hearsay and irrelevant and immaterial statements were erroneously admitted and that the cumulative effect of these errors was so prejudicial as to deny him a fair trial. Defense counsel did not object to any of the alleged hearsay and objected to only two of the statements challenged on appeal as irrelevant and immaterial. One objection[3] was sustained; the other objection[4] was overruled, but the reason advanced at trial was not the same one raised on appeal. Appellant has failed to preserve these evidentiary questions for appellate review. We have carefully reviewed the record and find no plain error.

■ Appellant next argues that evidence of other crimes was improperly admitted. The prosecution introduced evidence about the burglary of a sporting goods store, appellant's purchase of "stolen" cigarettes, appellant's failure to have or issue concealed weapons permits, and Thomas Auerbach's prior felony conviction and serving time in the penitentiary. The reference to the sporting goods store burglary, which involved the theft of guns, came in during the redirect examination of one of the special agents. The prosecutor attempted to establish that the special agents had kept notes about the progress of the investigation; one of the events noted by the agents was the burglary of the sporting goods store. Defense objections to the improper use of memoranda to refresh the witness's recollection and to the answers as hearsay were sustained. None of the firearms involved in the present case was stolen. Defense counsel's objection to the prosecutor's questions about concealed weapons permits was sustained by the district court. The district court also cautioned the jury that no issue in the present case involved any violation of Iowa law governing the registration of concealed weapons and that there was no evidence that either defendant had violated such laws. The reference to Thomas Auerbach's prior felony conviction and to his serving time in the penitentiary was cumulative; Thomas Auerbach's prior felony conviction was already before the jury as one of the elements of the unlawful possession of a firearm charge. We note our disapproval of the prosecutor's repeated questions about why Thomas Auerbach was in the penitentiary in the face of defense objections which were sustained by the district court.

■ Appellant did not object to the special agent's testimony about selling appellant cigarettes which had been described as stolen. We have carefully reviewed the record and find no plain error.[5]

---

3. Defense counsel objected to questions about the registration requirements for concealed weapons.

4. Defense counsel objected to the improper use of memoranda to refresh recollection; on appeal appellant argues that the answer improperly referred to persons Thomas Auerbach had met while in the penitentiary, thus emphasizing his criminal record.

5. As noted in *United States v. Robbins*, 613 F.2d 688, 693–94 (8th Cir. 1979), *citing United States v. Frederickson*, 601 F.2d 1358, 1365 (8th Cir.) (citations omitted), *cert. denied*, 444 U.S. 934, 100 S.Ct. 281, 62 L.Ed.2d 193 (1979),

[t]he rules for the admission of other crimes evidence are well established, and the court

Appellant next argues that certain remarks made by the prosecutor in closing argument denied him a fair trial.

[T]he trial court has broad discretion in controlling closing arguments. Absent a showing of abuse of discretion this court will not reverse. "The dominating question, always, is whether the argument complained of was so offensive as to deprive the defendant of a fair trial." We must view the prosecutor's remarks in the context of the entire trial.

*United States v. Bohr*, 581 F.2d 1294, 1301 (8th Cir.) (citations omitted), *cert. denied*, 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351 (1978); *see also United States v. Segal*, 649 F.2d 599, 604 (8th Cir. 1981); *United States v. King*, 616 F.2d 1034, 1040 (8th Cir.), *cert. denied*, 446 U.S. 969, 100 S.Ct. 2950, 64 L.Ed.2d 829 (1980); *United States v. Splain*, 545 F.2d 1131, 1135 (8th Cir. 1976) (no per se rule). We find no reversible error.

■ The first remark challenged by appellant was a reference to the intent of Congress in passing the firearms statutes.[6] As noted in *United States v. Norton*, 639 F.2d 427, 429 (8th Cir. 1981) (citations omitted), "[t]his Court has previously held that

testimony concerning the purpose of the Gun Control Act has little or no probative value in a trial for violation of the Act. There is even less justification for allowing the prosecutor to 'testify' in closing argument about the statute's purpose." We find no basis for reversal. Unlike *Norton*, in the present case the reference was brief and general in terms and the defense objection was sustained by the district court. The district court did not give a cautionary instruction to the jury; however, none was requested by defense counsel and, under the circumstances, we see no reason why the district court should have given such an instruction sua sponte.

■ Appellant also challenges the prosecutor's references to Thomas Auerbach as a convicted felon and his allegedly lying about his car theft conviction. Defense counsel did not object to this portion of the closing argument. We find no plain error. *See United States v. Segal*, 649 F.2d at 604 n.10. Thomas Auerbach's status as a convicted felon was already before the jury as an element of the government's unlawful possession charges against him. Defense counsel in closing argument addressed the

recently set out the requirements which must be met:

(1) a material issue on which other crimes evidence may be admissible has been raised; (2) the proffered evidence is relevant to that issue; (3) the evidence of other crimes is clear and convincing. In addition, to be admissible on such issues as intent, knowledge or plan, the other crimes evidence must relate to wrongdoing "similar in kind and reasonably close in time to the charge at trial." Finally, evidence otherwise admissible under Rule 404(b) may be excluded under Fed.R. Evid. 403, "if its probative value is substantially outweighed by the danger of unfair prejudice."

It is questionable whether the purchase of "stolen" cigarettes was relevant to proof of the crimes charged here, conspiracy to engage in the business of dealing in firearms without a license and engaging in the business of dealing in firearms without a license. The evidence in the present case was relatively straightforward; it was substantially undisputed that the firearms transactions occurred and that appellant did not have the requisite license. Nor do we think the present case is one in which "evidence of other crimes may be presented when 'they are so blended or connected with the one

on trial as that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged.'" *United States v. Miller*, 508 F.2d 444, 448–49 (7th Cir. 1974), *cited in United States v. Derring*, 592 F.2d 1003, 1007 (8th Cir. 1979); *see also Carter v. United States*, 549 F.2d 77, 78 (8th Cir. 1977) (res gestae).

However, appellant has not demonstrated that the admission of this evidence so adversely affected substantial rights as to result in a miscarriage of justice. Fed.R.Crim.P. 52(b); *see, e.g., United States v. Kutrip*, 670 F.2d 870, 877 (8th Cir. 1982), *citing United States v. Big Crow*, 523 F.2d 955, 960–61 (8th Cir. 1975), *cert. denied*, 424 U.S. 920, 96 S.Ct. 1126, 47 L.Ed.2d 327 (1976).

6. The prosecutor, speaking in general terms about the federal firearms statute, stated:

Now, what Congress intended to do is keep these guns out of the hands of convicted felons, but Congress also wanted to attack the problem at the root of the problem. The problem with these guns moving interstate, going overseas—Congress passed the Safe Streets Act to address that problem.

question whether Thomas Auerbach had lied about his conviction, explaining that he had run away from home when he was eighteen years old and evidently stole two cars in the process, his father's and another person's.

■ Appellant also challenges the prosecutor's reference to "the type of weapons that have been used by snipers around the country. These are the same types of weapons." The district court sustained the defense objection and instructed the jury that there was no issue in the case about the type of weapon or about possession of illegal weapons. Defense counsel's subsequent motion for a mistrial was denied. Appellant argues on appeal that the sniper reference was particularly prejudicial and inflammatory in the context of the attempted assassinations of President Reagan and Pope John Paul II during the spring of 1981 and therefore the district court should have declared a mistrial. We find no abuse of discretion in the district court's failure to declare a mistrial. Although the sniper reference was emotional, irrelevant and improper,[7] it was an isolated remark and was promptly condemned by the district court.

We note that the cumulative effect of the prosecutor's improper remarks upon the jury came dangerously close to requiring reversal in the present case. We affirm, however, because of the prompt remedial action taken by the district court and relatively strong evidence. We note, however, that we have been called upon with unnecessary frequency to review allegations of prosecutorial misconduct. *E.g., United States v. Singer*, 660 F.2d 1295, 1305 (8th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1030, 71 L.Ed.2d 314 (1982). Many of the alleged instances of prosecutorial misconduct have had some merit, but have not required reversal, and could have been avoided by restraint on the part of prosecutors. Such restraint would not in any way impede vigorous prosecution. We strongly warn prosecutors to scrupulously avoid making the type of emotional, irrelevant remark disapproved herein. Once again we repeat the admonition of Justice Sutherland in *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935):

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

■ Appellant next argues that the long period of preindictment delay denied him due process. We disagree. The last firearms transaction occurred at the end of May 1979; the indictments were returned in March 1981. The twenty-two month delay did require investigation by the district court. Following a pretrial hearing on appellant's motion to dismiss the indictment, the district court concluded that appellant had failed to demonstrate actual prejudice and that the preindictment delay was due to ongoing undercover investigations and not an attempt to gain a tactical advantage over the defendants. These findings are not clearly erroneous. Even assuming that appellant had shown prejudice, preindictment investigative delay cannot ordinarily

---

**7.** The government argues that the sniper reference was a fair response to defense counsel's closing argument that the firearms involved in the case were sporting weapons or hunting guns. We disagree; the government could have adequately rebutted the defense argument without introducing snipers. Nor do we think that the fact that the recent assassination attempts involved persons using handguns at close range, and thus did not involve a "typical" sniper, makes much difference.

be charged against the government. *See, e.g., United States v. Reed*, 647 F.2d 849, 852 (8th Cir. 1981); *United States v. Hood*, 593 F.2d 293, 296 (8th Cir. 1979); *United States v. Matlock*, 558 F.2d 1328, 1330 (8th Cir.), *cert. denied*, 434 U.S. 872, 98 S.Ct. 218, 54 L.Ed.2d 152 (1977).

Appellant next argues that the conduct of the special agents in investigating and developing the case against him was so outrageous as to constitute "entrapment as a matter of law" because the special agents initially approached him and repeatedly solicited firearms transactions. We have carefully reviewed the record and conclude that the district court did not err in finding that the special agents' involvement, although substantial, was not so outrageous or fundamentally unfair as to bar appellant's prosecution and conviction. *See, e.g., United States v. McCaghren*, 666 F.2d 1227, 1230–31 & nn. 5–8 (8th Cir. 1981); *United States v. Quinn*, 543 F.2d 640, 647–48 (8th Cir. 1976); *see also Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976); *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). Here, the evidence showed that the special agents set up the undercover investigation and approached appellant and his son after receiving information from other law enforcement officials connecting the Auerbachs with firearms violations. This is evidence of predisposition and relevant to the conventional entrapment defense. *See United States v. Quinn*, 543 F.2d at 647–48 (discussing "conventional" unlawful entrapment and outrageous government conduct entrapment).[8]

Accordingly, the judgment of the district court is affirmed.

**8.** The conventional concept of "unlawful entrapment" is that a criminal intent or design is deliberately implanted in the mind of an innocent person by government agents including informers and undercover agents, and that a person is not unlawfully entrapped if he has a predisposition to commit the crime, and if the agents simply give him the opportunity to commit it and work in concert with him in committing it or attempting to commit it. Whether a person has been entrapped in that sense of the term is ordinarily a question of fact for the jury with the burden being on the government to prove an absence of entrapment....
*United States v. Quinn*, 543 F.2d 640, 647–48 (8th Cir. 1976) (citations omitted).