UNITED STATES of America, Appellee,

v.

James Ronald COOK, Appellant.

No. 85–1086.

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1985.

Decided Aug. 21, 1985.

James C. Delworth, St. Louis, Mo., for appellant.

Dean R. Hoag, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BOWMAN, Circuit Judge.

James Ronald Cook was tried before a jury on two counts charging violations of 18 U.S.C. App. § 1202(a) (possession of a firearm by a convicted felon) on November 5, 1984. The jury returned a verdict of guilty on both counts. The District Court[1] sentenced Cook to two consecutive two-year terms. Cook seeks reversal of his convictions on three grounds: 1) that the District Court erred in failing to sustain his motion for a new trial based upon certain prejudicial statements made by police officers at his trial; 2) that he was denied his Sixth Amendment right to effective assistance of counsel; and 3) that certain comments made by the prosecutor during closing argument constituted prejudicial error. We affirm Cook's convictions.

## I.

Detective Thomure of the St. Louis Police Department testified at trial that on the evening of August 23, 1983, he and his partner Officer Frederiksen were staking out an area near Vandeventer and St. Louis Avenues in St. Louis, Missouri, in anticipation of a narcotics transaction. During the course of their surveillance, the officers observed a beige Dodge circle the block a number of times and then pull over to the side and stop. The officers observed Cook get out of the back seat and stand on the sidewalk. The officers proceeded to drive by Cook. Thomure testified that he observed Cook reach underneath his shirt, remove a revolver, place it on the street by the gutter, and start walking away. Thomure went on to testify that he went over and seized the gun. Thomure identified the gun as a revolver containing six rounds of live ammunition. On cross-examination by Cook's attorney, Thomure testified that he believed that Cook had a reputation as a drug dealer and robber, had previously been arrested, and posed a danger to the police.[2]

Thomure's partner Frederiksen also testified that he saw Cook put his right hand up under his tee-shirt, take out a small revolver, and place the gun on the street near the curb. Frederiksen went on to state that he got out of the car, yelled at Cook to stop, walked up to him, and placed him under arrest. On cross-examination by Cook's attorney, Frederiksen testified that he believed that Cook was a drug user, had previously been arrested, and had been tried for robbery.

Lawrence McDaniel, testifying on behalf of Cook, stated that he was the driver of the car that Thomure and Frederiksen observed pull over on the evening of August 23, 1983. McDaniel testified that he had been with Cook the entire day and had not at any time seen Cook with a gun. On cross-examination, McDaniel admitted that he had been engaged in conversation with a friend at the time Cook was seen with the gun, and thus was not watching Cook "consistently."

Detective Bailey of the St. Louis Police Department testified that on the morning of January 24, 1984, he and Detective Snow of the St. Louis Police Department went to an apartment building where they were

1. The Honorable James H. Meredith, Senior United States District Judge for the Eastern District of Missouri.

2. The testimony did not indicate that Cook himself presented an immediate danger to the police. Rather, Cook was believed dangerous because his modus operandi for robbing drug dealers was to pretend to be a police officer; the police were worried that a drug dealer might disbelieve their claim to be police and would become violent against them.

admitted into an apartment by its tenant, William Love. Bailey told Love that they were looking for three people who were wanted for robbery, and that they had information that those people were staying in Love's apartment. Love told Bailey that Love's son was sleeping in the front bedroom and that if any other people were there, they would be with him. Love knocked on the bedroom door and, hearing no reply, opened the door. Bailey looked into the room and observed Cook lying on a bed next to one Regina Peak. Bailey testified that as he looked in, Cook moved his arm up and away from a gun that was between the mattress and box springs. Bailey testified that Cook's hand originally had been two inches from the protruding butt of the gun. Bailey further testified that Cook stated that he got the gun from a dope dealer he had robbed.

Bailey's partner Snow also testified that he observed Cook and Regina Peak on a bed with what appeared to be the butt of a handgun sticking out from between the mattresses. Snow stated that Cook's hand was about two or three inches from the gun. Snow testified that he pulled his revolver while Bailey seized the gun. Snow also testified that Cook stated that he had taken the gun from a person who sold weed.

## II.

Cook's first contention on appeal is that the District Court erred in failing to grant him a new trial after Detective Thomure and Officer Frederiksen made certain prejudicial statements about him before the jury. Specifically, Cook complains that testimony by Thomure and Frederiksen that Cook had previously been arrested, that Cook was a drug-user and had a reputation for robbing drug dealers, that Cook had been in jail, and that Cook was a danger to the police was irrelevant to his case, and prejudicial in the sense that it contributed to his conviction by making him look bad in the eyes of the jury.

■ It is well established that admission of testimony irrelevant to the crime charged may prejudice a defendant and thereby deny him a fair trial. *Cf. United States v. Harding*, 525 F.2d 84, 88–89 (7th Cir.1975); *Odom v. United States*, 377 F.2d 853, 859 (5th Cir.1967). Such testimony may imply that a defendant "is more likely to have committed the offense for which he is being tried than if he has previously led a blameless life." 525 F.2d at 89. To the extent testimony does so imply, it may be prejudicial to a defendant:

> The deep tendency of human nature to punish not because [the defendant] is guilty this time but because he is a bad man and may as well be condemned now that he is caught is a tendency which cannot fail to operate with any jury, in or out of Court.

IA J. Wigmore, *Wigmore on Evidence* § 57, at 1185 (1983).

■ Cook is quite correct when he notes that some of the evidence elicited from the police officers at trial is of the type that had the potential to prejudice him. We note, however, that in Cook's case, the complained-of evidence was elicited not by the prosecution, but by Cook's attorney, in an attempt to defend Cook from a rather strong case by the government. At trial, four police officers testified to have seen Cook in possession of guns on two separate occasions. Cook did not testify. Cook's attorney argued to the jury that there was a reasonable doubt that it was Cook who actually had possessed the guns, because there were a number of other people present in both instances when a gun was found. Cook's attorney also argued to the jury that the police officers were out to set Cook up because they had wanted to pressure him into being an informer. Apparently to bolster his argument that the police wanted to set Cook up because they thought he was no good and because he wouldn't act as a police informant, Cook's attorney elicited from the police officers testimony that they thought Cook was a drug user and a danger to them.

■ It is thus apparent that the testimony as to Cook's character was not improp-

erly elicited by the prosecutor in an attempt to make Cook's conviction more likely by indicating to the jury that Cook was a bad person. Rather, the evidence seems to have been elicited by Cook's attorney as a matter of trial strategy, with full understanding of its prejudicial nature, in the hope that it could induce a reasonable doubt in the mind of a juror. It is also apparent that while it is eminently desirable for a trial judge to prevent a prosecutor from introducing such "character" evidence so as improperly to enhance the chances of a conviction, a trial judge will (and should) rarely interfere to prevent the introduction of such evidence when a defendant's counsel has determined that such evidence could be helpful to the defense despite its prejudicial nature.[3]

Professor Wigmore, while noting the potential prejudicial effect of negative character evidence on the defendant, *see supra* p. 4, apparently understood the general bar on introduction of such negative character evidence to be a bar only as to introduction by the prosecution:

> The rule, then, firmly and universally established in policy and tradition, is that the *prosecution* may not initially attack the defendant's character.

*Wigmore*, § 57, at 1185 (emphasis added). This is not to say that defense counsel could not inadvertently prejudice a client's case. Defense counsel may indeed prejudice a client by rendering ineffective assistance. But the reason for excluding prejudicial evidence irrelevant to the crime charged when the prosecutor seeks to introduce it—because it is introduced improperly to enhance the chances of a conviction—is absent when defense counsel seeks to do so. Also largely absent, as a practical matter, is the ability of the trial judge to exclude such evidence when defense counsel deems it useful to introduce such evidence on the defendant's behalf.

■ We therefore hold that where it is defense counsel that has made the choice to introduce evidence of the defendant's character, a claim that the defendant was thereby harmed is essentially a claim that his counsel was not acting as the counsel guaranteed by the Sixth Amendment, and is therefore properly considered in connection with a claim of ineffective assistance of counsel, and not as a separate ground for claiming error in the denial of a motion for a new trial. *Cf. Bibbs v. Wyrick*, 526 F.2d 226 (8th Cir.1975), *cert. denied*, 425 U.S. 981, 96 S.Ct. 2188, 48 L.Ed.2d 807 (1976) (where defense counsel provisionally sought to have the murder weapon admitted because it did not have the defendant's fingerprints on it, no ineffective assistance of counsel).

## III.

■ Cook's second contention (into which we have now merged his first contention) is that he was denied his Sixth Amendment right to effective assistance of counsel (1) because defense counsel elicited testimony from two police officers that Cook robbed dope dealers; (2) because counsel failed to object to testimony from yet another officer that Cook stated that he robbed dope dealers; and (3) because counsel also failed to object to introduction of the nature of the underlying felony of which Cook had been convicted, proof of which was an element of the crime with which Cook was here charged.

The standard governing claims by a defendant of ineffective assistance of counsel was articulated by the Supreme Court in

---

**3.** In the present case, the trial judge acted properly in allowing defense counsel to pursue his trial strategy and then carefully instructing the jury that the evidence elicited as to Cook's character had no relevance to his guilt:

> Ladies and gentlemen of the jury, during the morning testimony, certain testimony came out by the police officers that, in response to a question from the defendant's attorney about the fact that they suspected he had a reputation for robbing drug dealers and other drug users.
>
> Well, that's not—that testimony is stricken and the jury can disregard it completely. It has nothing whatsoever to do with whether or not he's guilty of the offense for which he's charged.

Trial Transcript at 1–38.

*Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 2064. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* at 2070. To establish prejudice sufficient to warrant reversal, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 2068.

In the present case, for each count charged, two police officers testified that they saw Cook in possession of a gun. For the possession charged in Count I, two of the officers testified that Cook admitted that he had taken the gun from a drug dealer. For the possession charged in Count II, two officers testified that Cook removed the gun from underneath his shirt. Cook's only witness, McDaniel, testified that he had not seen Cook with a gun on the occasion charged in Count II. On cross-examination, however, McDaniel admitted that he was engaged in conversation with someone else when Cook was discovered with the gun and was not watching Cook "consistently." Cook's prior felony conviction, which was an element of the crime charged, was undisputed. Moreover, we note that the District Court carefully instructed the jury that in deciding whether Cook was guilty of the charges against him it was not to consider any testimony as to his reputation. We therefore cannot conclude that the alleged failures by Cook's counsel undermine our confidence in the verdict. Thus, we reject Cook's claim that his counsel rendered ineffective assistance at trial.

### IV.

Finally, Cook contends that his conviction should be reversed because during closing argument the prosecutor urged the jury to draw an adverse inference from the fact that Regina Peak, who was present both times that Cook was found with a gun, did not testify in Cook's behalf:

> You're also allowed to draw what they call adverse inferences, and that is, here we have Regina Peak. You'll notice that she was at both of them, both of these instances. She didn't walk in here and tell you what happened. She didn't walk in and tell you that Thomure and Frederiksen are lying, or that Bailey and Snow are lying, and you're allowed to draw an inference. Now, that's his fiancee. That's the defendant's fiancee. And the adverse inference is she wasn't called because what she had to say would have corroborated what the police had to say.

Trial Transcript 2–12 to –13. Cook's counsel objected to this statement. The District Court stated both immediately, and in instructing the jury, that the defendant was under no obligation to put on any evidence and did not have the burden of doing so. The District Court did not instruct the jury that it was permitted to draw any adverse inference as to what Regina Peak's testimony might have been.

As a general matter, "if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate

the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would have been unfavorable." *Graves v. United States*, 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1893). But such a presumption is "to be cautiously applied," *Mammoth Oil Company v. United States*, 275 U.S. 13, 52, 48 S.Ct. 1, 10, 72 L.Ed. 137 (1927), and "where the witness was apparently equally available to both parties, [we seriously doubt whether] any presumption should flow from the failure of either party to call such witness." *Schoenberg v. Commissioner*, 302 F.2d 416, 420 (8th Cir.1962).

■ In the present case, there was no showing whatsoever on the part of the government that it was peculiarly within Cook's power to produce Peak as a witness; it therefore was clearly improper for the prosecutor to argue to the jury that it may draw any adverse inference.[4] At the same time, we cannot conclude that the prosecutor's improper remarks prejudiced Cook. As we already have noted, the government presented two eyewitnesses to each count with which Cook was charged; two of the witnesses testified that they had seen Cook with a gun tucked in his pants and two had testified that Cook had been found lying on a bed with his hand two inches from a gun that he later admitted to be his. In the face of such compelling evidence, we cannot conclude that the remarks by the prosecutor urging the jury to draw an additional inculpatory inference from the absence of a single witness casts doubt upon the jury's verdict. *Cf. Robideau v. Rhay*, 452 F.2d 605, 606 (9th Cir.1971) (prosecutor's comment on defendant's failure to testify was harmless given uncontradicted and unshaken testimony of several witnesses to the crime).

The convictions are affirmed.

4. We believe it would be the better practice for the trial court to decide, upon request by a party, if such an adverse inference should be permitted. *See United States v. Johnson*, 562 F.2d 515 (8th Cir.1977) ("absent witness" instruction, permitting jury to draw inference that testimony of a witness peculiarly within the power of one party to call would be unfavorable when witness is not called, is within discretion of trial court).