**UNITED STATES of America, Appellee,**

v.

**Adam David HERNANDEZ, Appellant.**

**No. 85–1190.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 10, 1985.

Decided Dec. 12, 1985.

Stephen H. Broudy, Ft. Lauderdale, Fla., for appellant.

Thomas E. Dittmeier, U.S. Atty., St. Louis, Mo., for appellee.

Before HEANEY, Circuit Judge, BRIGHT, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BOWMAN, Circuit Judge.

Adam David Hernandez appeals from the District Court's[1] entry of judgment and sentence following a jury verdict of guilty on charges of possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) & 846. For reversal, Hernandez argues that the District Court erred in denying his motion for a mistrial. Hernandez's trial counsel made the motion for mistrial during the government's opening statement after the Assistant United States Attorney stated that a witness, an indicted co-conspirator, "admits everything." Hernandez argues that this statement was improper and so prejudicial that it deprived him of a fair trial. We affirm.

## I.

Early on the morning of October 18, 1984, Hernandez went to the Miami International Airport. Detective Claudius Noriega of the Miami Police Department was on duty at the airport that morning, watching for "airport introduction of narcotics."

He noticed Hernandez buying his ticket because Hernandez seemed unusually nervous and kept looking toward the entrance doors. Noriega continued to observe Hernandez after he left the ticket counter. Hernandez walked outside and waved to another man who was approaching from the parking lot. The two men had a short conversation outside the terminal. They entered the building together but then separated. The second man was later identified as Clyde Paul Adams, an indicted co-conspirator who was the government's key witness at trial.

Noriega and his partner stopped Hernandez at the security checkpoint, identified themselves, and asked him some questions. Hernandez told them that he was flying to St. Louis to close a real estate deal and that he was traveling alone. Hernandez consented to a search of his luggage. The detectives found nothing illegal, but neither did they find any documents relating to a real estate transaction. They permitted Hernandez to board the plane. They later observed Clyde Adams also board the plane just as it was about to depart. They then obtained copies of the two men's tickets from the TWA ticket counter, and notified the Drug Enforcement Agency (DEA) in St. Louis of their suspicions regarding Adams and Hernandez.

Adams and Hernandez left the plane in St. Louis separately. Each was approached by a DEA agent and asked to go to the airport police office. Adams consented to a search of his luggage, and the agents found approximately one pound of cocaine hidden inside some socks. Adams then confessed and identified Hernandez as the person who had given him the cocaine. The agents then arrested both Adams and Hernandez and charged them with possession of cocaine with intent to distribute and conspiracy to distribute cocaine.

Adams, Hernandez, and another man, Frank Boersig, were originally indicted together as co-conspirators, but Boersig was

---

1. The Honorable John F. Nangle, United States District Court for the Eastern District of Missouri.

granted a separate trial. Before the trial of the remaining two defendants, Adams agreed to plead guilty to the conspiracy count and to cooperate with the government. The possession count was dropped against him, and he was told that he would probably get a reduced sentence. At trial, Adams was the government's chief witness, although three detectives also testified. Hernandez did not testify, nor did the defense call any witnesses.

In his opening statement, the Assistant United States Attorney who tried the case on behalf of the government outlined the testimony he expected Adams to give. He described the planning and preparation for the trip, what happened during the trip itself and the results of the search in St. Louis. This much of his opening statement matched Adams' actual testimony. Then he made the remark to which appellant objects: "Shortly after the cocaine was found, the evidence will show that Mr. Clyde Paul Adams, ladies and gentlemen, admits everything." Defense counsel objected to the statement. The District Court sustained the objection and ordered the comment stricken from the record, but did not give a cautionary instruction to the jury at that time. Defense counsel also moved for a mistrial, which was denied by the court. The government's attorney then stated that Adams made "written statements or oral statements ... shortly after the cocaine was found." Defense counsel again objected, and the court again sustained the objection.

During its direct examination of Adams, the government attempted to get testimony about his confession admitted into evidence, but the court once again sustained defense counsel's objection. However, the court did admit evidence of Adams' guilty plea over defense counsel's objection. On cross-examination of Adams, defense counsel implied that Adams' credibility was suspect because of his cooperation with the government pursuant to the plea bargaining agreement. On redirect the government did not attempt to question Adams again about his statements to the police after the cocaine was found. Although his confession never was admitted into evidence, he testified in detail about what he and Hernandez intended and what they did. This testimony provided the principal evidence of Hernandez's guilt.

At the end of the trial, the District Court properly instructed the jury that "[s]tatements and arguments of counsel are not evidence in the case" and that "[a]ny evidence as to which an objection was sustained by the Court and any evidence ordered stricken by the Court must be entirely disregarded."

## II.

The test for reversible prosecutorial misconduct has two parts: (1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial. *See United States v. Powell*, 771 F.2d 1173, 1175 (8th Cir.1985); *United States v. Cook*, 771 F.2d 378, 383 (8th Cir.1985); *United States v. Lacayo*, 758 F.2d 1559, 1565 (11th Cir.1985); *see also Frazier v. Cupp*, 394 U.S. 731, 736–37, 89 S.Ct. 1420, 1421, 22 L.Ed.2d 684 (1969). This Court has stated that "not every impropriety of argument calls for a new trial or for a reversal of a judgment of conviction. And appellate courts should not reverse for such improprieties unless persuaded that they probably prejudiced the defendant and that the prejudice was not removed effectively by the trial judge before submission of the case to the jury." *Keeble v. United States*, 347 F.2d 951, 956 (8th Cir.), *cert. denied*, 382 U.S. 940, 86 S.Ct. 394, 15 L.Ed.2d 350 (1965). "The grant or denial of a motion for mistrial is placed in the sound discretion of the district court and may only be reversed on a showing of abuse of discretion." *Powell*, 771 F.2d at 1175. There are numerous cases in which courts have censured prosecutors for improper statements or conduct but nevertheless have affirmed the conviction because the misconduct was found, in the context of the whole

trial, not to be prejudicial. *See, e.g., United States v. Young*, — U.S. —, 105 S.Ct. 1038, 1047, 84 L.Ed.2d 1 (1985); *United States v. Hasting*, 461 U.S. 499, 512, 103 S.Ct. 1974, 1982, 76 L.Ed.2d 96 (1983); *Cook*, 771 F.2d at 383; *United States v. Auerbach*, 682 F.2d 735, 739–40 (8th Cir.), *cert. denied*, 459 U.S. 911, 103 S.Ct. 219, 74 L.Ed.2d 174 (1982). Although we believe the government attorney's remarks in this case were improper, a review of the entire transcript discloses that the remarks did not have any significant prejudicial effect on the fairness of the trial.

### A.

We turn first to the question of prosecutorial impropriety. At trial, defense counsel objected to the prosecutor's remarks concerning Adams' pre-trial statements on the ground that they were immaterial. On appeal, however, defendant's main argument is based on the case of *United States v. Killian*, 524 F.2d 1268 (5th Cir.1975), *cert. denied*, 425 U.S. 935, 96 S.Ct. 1667, 48 L.Ed.2d 177 (1976). The court in *Killian* stated that "it is improper conduct for a prosecuting officer to state categorically to a jury that one of the defendants has confessed to the crime for which he is on trial unless such confession has already met the test of voluntariness and other questions of admissibility that may lurk in the trial to come." *Id.* at 1275. We note that *Killian* is distinguishable from the present case in significant ways. The co-defendant in *Killian* had not pled guilty, as had Adams, but was still on trial. Moreover, he did not testify, and the pre-trial statements he made were specifically ruled inadmissible later in the trial. In the present case, Adams' pre-trial statements most likely would have been admissible as prior consistent statements after defense counsel attacked his credibility on cross-examination. *See* Fed.R.Evid. 801(d)(1)(B). Adams' statements were ruled inadmissible during his direct examination. The government, however, did not attempt to get them admitted after cross-examination, so we do not know how the District Court would have ruled.

In *United States v. Veltre*, 591 F.2d 347 (5th Cir.1979), the court found that it was permissible for the prosecutor to remark in his opening statement that a co-defendant had pled guilty to the crime. This is not precisely the same as referring to a confession, but the overall trial situation was very similar to that in the present case. In *Veltre*, as in this case, the co-defendant who pled guilty was the government's chief witness. The prosecutor anticipated that the defense's primary tactic would be to impeach the witness's credibility by implying that she was lying in order to get her own sentence reduced. The court stated that "[w]here ... the codefendant is a witness at trial, subject to the rigors of cross-examination, disclosure of the guilty plea to blunt the impact of attacks on her credibility serves a legitimate purpose and is permissible." 591 F.2d at 349. *See also United States v. Simmons*, 567 F.2d 314, 321 (7th Cir.1977) (use in opening statement of co-defendant's confession naming his accomplice, although improper, was not prejudicial since confession was admissible as a prior consistent statement after cross-examination); *United States v. Stone*, 472 F.2d 909, 914 (5th Cir.1973), *cert. denied*, 449 U.S. 1020, 101 S.Ct. 586, 66 L.Ed.2d 482 (1980) (use of co-defendant's confession in opening statement improper, but prejudicial effect dissipated when confession was later admitted into evidence).

We believe that the Assistant United States Attorney's remarks in his opening statement and on direct examination of Adams regarding Adams' pre-trial statements were improper. At the times the prosecutor made those remarks, there was some question whether Adams' pre-trial statements would be admissible. Until the trial court established the admissibility of those statements, the prosecutor should have refrained from calling them to the attention of the jury. By prematurely calling Adams' pre-trial statements to the attention of the jury, the prosecutor created the danger of a mistrial and injected into the case an issue for appellate review that,

depending upon the appellate court's assessment of the prejudicial effect of the prosecutor's improper remarks, might result in the reversal of an otherwise proper conviction. We admonish the Assistant United States Attorney that he must not allow his "zeal to out run discretion." *Killian*, 524 F.2d at 1274.

### B.

Once a court has determined that a prosecutor's conduct was improper, it must then decide whether the conduct, when reviewed in the context of the whole trial, was " 'so offensive as to deprive the defendant of a fair trial.' " *Auerbach*, 682 F.2d at 739 (quoting *United States v. Bohr*, 581 F.2d 1294, 1301 (8th Cir.), *cert. denied*, 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351 (1978) ). There are three factors that the courts usually consider to determine the prejudicial effect of prosecutorial misconduct: (1) the cumulative effect of such misconduct; (2) the strength of the properly admitted evidence of the defendant's guilt; and (3) the curative actions taken by the trial court. *See United States v. Singer*, 660 F.2d 1295, 1305 (8th Cir.1981), *cert. denied*, 454 U.S. 1156, 102 S.Ct. 1030, 71 L.Ed.2d 314 (1982).

In many of the cases in which a court has found prejudice serious enough to warrant reversal of a conviction, the prosecutor has repeatedly made improper comments. *See, e.g., Berger v. United States*, 295 U.S. 78, 84, 55 S.Ct. 629, 631, 79 L.Ed. 1314 (1935) (throughout trial prosecutor bullied witnesses, misstated facts on cross-examination, put words in witnesses' mouths, made undignified and intemperate argument to the jury containing improper insinuations and assertions calculated to mislead jury, and generally conducted himself in a "thoroughly indecorous and improper manner" ); *United States v. Pearson*, 746 F.2d 787, 796 (11th Cir.1984) (prosecutor's repeated remarks in closing argument regarding defendant's nervousness in courtroom was improper character evidence and an indirect comment on his failure to testify; this, plus trial court's over-

ruling of defense objections and failure to give curative instruction to jury created cumulative prejudicial effect); *United States v. Stahl*, 616 F.2d 30, 31–32 (2d Cir.1980) (prosecutor continually referred to defendant's great wealth in an obvious attempt to create class prejudice in jurors); *Leonard v. United States*, 277 F.2d 834, 841 (9th Cir.1960) (prosecutor's opening statement was a forty-minute "diatribe" recounting defendant's eighty-three other alleged "crimes," most of which were clearly inadmissible). In the present case there were a few other comments to which defense counsel objected during the trial. However, the number was certainly not large, and on appeal defendant raises only the single remark made during the opening statement. Thus, there is no "cumulative effect" problem in this case.

Defendant argues in his brief that the "admits everything" statement is improper and prejudicial because it is a "shorthand characterization of an accused, not based on evidence." *Singer*, 660 F.2d at 1304 n. 17. It is true that because of the timing of the remark—at the end of a recitation of Adams' anticipated testimony implicating Hernandez—the jury might have associated Hernandez with Adams' confession. However, the remark on its face refers only to Adams' admissions, and the jurors may well have interpreted it to mean that Adams admitted his own guilt, not Hernandez's. There may be an element of improper "shorthand characterization" here, but it is not enough to result in prejudicial error. Other courts have found far more damning characterizations not to be prejudicial. *See, e.g., id.* at 1304 (prosecutor's reference to defendants as "crooks" not prejudicial in context of whole trial); *United States v. Correa-Arroyave*, 721 F.2d 792, 795 (11th Cir.1983) (prosecutor's reference to defendant in opening statement as "a big-time, high stakes, narcotics dealer" held proper as a fair characterization of the evidence to be adduced at trial).

The United States Supreme Court has referred to the existence of "overwhelming evidence" of the defendant's guilt as a

factor in deciding that prosecutorial misconduct did not have a seriously prejudicial effect. *Young,* 105 S.Ct. at 1049; *Hasting,* 461 U.S. at 512, 103 S.Ct. at 1982; *Berger,* 295 U.S. at 89, 55 S.Ct. at 633. The Court has never stated, however, that the other evidence *must* achieve such status in order to affirm a conviction. It is only one of the factors to be considered, and the reviewing court should "consider the trial record as a whole." *Hasting,* 461 U.S. at 509, 103 S.Ct. at 1981. This Court has affirmed convictions, despite prosecutorial misconduct, where the evidence of guilt was "relatively strong," *Auerbach,* 682 F.2d at 740, and where the evidence presented a "very strong case" against the defendant, *Singer,* 660 F.2d at 1305. *See also Cook,* 771 F.2d at 383 ("compelling evidence"). In the present case, the evidence was certainly strong. It is true that the most damaging evidence against Hernandez came from one source—Adams—whose credibility might be suspect because of his desire to reduce his own sentence. However, Adams testified at length during the trial, was subjected to cross-examination, and apparently convinced the jury that he was telling the truth. In addition, the testimony of the detectives corroborated much of Adams' testimony and provided circumstantial evidence of Hernandez's guilt.

The third factor used in determining prejudicial effect is the remedial action taken by the trial court. *See, e.g., Cook,* 771 F.2d at 382; *Auerbach,* 682 F.2d at 740; *Singer,* 660 F.2d at 1305. Ideally, the trial court should give a cautionary instruction to the jury immediately after the misconduct occurs. *See, e.g., Auerbach,* 682 F.2d at 740; *United States v. Carroll,* 678 F.2d 1208, 1210 (4th Cir.1982). The District Court in this case did not give a specific curative instruction immediately after the improper statement was made, but the court did sustain defense counsel's objection and order the improper remarks stricken from the record. At the end of the trial, the District Court instructed the jury to entirely disregard such improper remarks and not to consider statements of counsel as evidence in the case. Thus, the District Court did take remedial action to alleviate any possible prejudice. Viewing the entire record, we believe that the lack of a specific and immediate cautionary instruction is not serious enough to tip the balance toward reversal.

We conclude that the prosecutor's improper remarks cannot be viewed as sufficiently prejudicial to warrant reversal of Hernandez's convictions. The improper remarks were not aggravated by subsequent and repeated prosecutorial misconduct causing a cumulative prejudicial effect, there was ample evidence of Hernandez's guilt, and the District Court took proper and sufficient remedial action.

### III.

We hold that the District Court did not abuse its discretion in denying defendant's motion for a mistrial. Defendant has failed to show that the prosecutor's conduct, considered in the context of the whole trial, was so prejudicial as to deprive him of a fair trial.

Affirmed.