UNITED STATES of America, Appellee,

v.

**Johnny BOYCE, Appellant.**

**No. 85–2330.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 9, 1986.

Decided Aug. 6, 1986.

Lee Lawless, Asst. Federal Public Defender, St. Louis, Mo., for appellant.

David M. Rosen, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BOWMAN, Circuit Judge.

Johnny Boyce appeals his jury conviction of violating 18 U.S.C.App. § 1202 by possessing a firearm after having been convicted previously of a felony. We affirm.

### I.

At approximately 4:00 a.m. on a September 1984 morning, St. Louis Police Officer Ray Reynolds followed and eventually stopped an automobile that he had seen speeding around a corner. Boyce, the driver, was accompanied by a female passenger named Kim Bird. Officer Reynolds noticed a rifle on the back floor of the automobile which, according to Reynolds's testimony at trial, Boyce initially claimed as his own, stating that he was going hunting in the morning. At the same time, Boyce reached into a bag and withdrew a box of ammunition for the rifle. Reynolds related that when asked for his gun owner's card and hunting license, Boyce said that the rifle was not his, but that it belonged to his father. Reynolds asked Boyce to exit the car, frisked him for any other weapons, and then directed him to the rear of the car where they stood talking. About that time, two other police officers drove up, and one informed Reynolds that Boyce was a convicted felon. Reynolds then arrested Boyce and read him his *Miranda* rights.

Before trial, Boyce filed a motion to suppress, seeking to exclude from evidence the rifle (and the ammunition found with it) as well as any statements he made at the time of the stop. At the suppression hearing, the government's only witness was William Eaton, a special agent of the Bureau of Alcohol, Tobacco, and Firearms. Officer Reynolds was not present because he was participating in a training program. Eaton testified about the contents of Reynolds's police report and about a conversation he had with Reynolds concerning the case. Boyce objected to Eaton's testimony on the ground that Reynolds's absence effectively denied Boyce his Sixth Amendment right to confront and cross-examine the witnesses against him. The magistrate overruled this objection and recommended denying the motion to suppress. The District Court[1] agreed. Reynolds later testified at trial as to the circumstances of his stop and arrest of Boyce.

On appeal, Boyce raises two points of error in his quest for a new trial: (1) that the government's failure to call Reynolds to testify during the suppression hearing deprived him of his Sixth Amendment right to confront the witnesses against him; and (2) that in closing argument the prosecutor made improper and prejudicial remarks, thus depriving him of the right to a fair trial.

### II.

Boyce first claims that during the suppression hearing he was deprived of his right to confront the witnesses against him when a law enforcement agent other than the arresting officer testified as to the circumstances of the stop and arrest. We disagree. The Sixth Amendment states in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right ...

---

**1.** The Honorable Stephen N. Limbaugh, District Judge for the Eastern District of Missouri.

to be confronted with the witnesses against him...." Denial of the right to cross-examine a witness at trial " 'would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.' " *Brookhart v. Janis,* 384 U.S. 1, 3, 86 S.Ct. 1245, 1246, 16 L.Ed.2d 314 (1966); *see Lee v. Illinois,* — U.S. —, 106 S.Ct. 2056, 2062–63, 90 L.Ed.2d 514 (1986). Nevertheless, the right of confrontation is not absolute. Under the various exceptions to the hearsay rule, Fed.R. Evid. 801–805, evidence consisting of the out-of-court statements of persons not testifying at trial may be admitted even though the defendant has no opportunity to either confront or cross-examine the declarants. *See Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980) (evidence admitted under a well-rooted hearsay exception does not violate the confrontation clause). *See generally* Note, *Confrontation and the Unavailable Witness: Searching for a Standard,* 18 Val.U. L.Rev. 193 (1983).

Moreover, the right of confrontation does not apply to the same extent at pretrial suppression hearings as it does at trial. "[T]he interests at stake in a suppression hearing are of a lesser magnitude than those in the criminal trial itself. At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial." *United States v. Raddatz,* 447 U.S. 667, 679, 100 S.Ct. 2406, 2414, 65 L.Ed.2d 424 (1980); *United States v. Matlock,* 415 U.S. 164, 172–74, 94 S.Ct. 988, 993–95, 39 L.Ed.2d 242 (1974). This difference in procedural protections is reflected in the Federal Rules of Evidence. Rule 104(a) states that the trial court, in making its determination of preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence, "is not bound by the rules of evidence except those with respect to privileges."

In an analogous context, the Supreme Court has declared that a defendant is not deprived of his Sixth Amendment right to confrontation at a pretrial hearing where the arresting officers testify as to what eye-witness informants told them about the defendant's activities. *McCray v. Illinois,* 386 U.S. 300, 312–13, 87 S.Ct. 1056, 1063–64, 18 L.Ed.2d 62 (1967); *Cooper v. California,* 386 U.S. 58, 62 n. 2, 87 S.Ct. 788, 791 n. 2, 17 L.Ed.2d 730 (1967). *See United States v. Diaz,* 685 F.2d 252, 255 (8th Cir.1982); *United States v. Merritt,* 695 F.2d 1263, 1269–70 (10th Cir.1982), *cert. denied,* 461 U.S. 916, 103 S.Ct. 1898, 77 L.Ed.2d 286 (1983). We see no principled basis on which to distinguish cases involving the hearsay statements of informants from those involving the hearsay statements of an arresting officer.

Accordingly, the trial court may accept hearsay evidence at a suppression hearing if the court is satisfied that the statements were made and that there is nothing to raise serious doubt about their truthfulness. *Matlock,* 415 U.S. at 175–77, 94 S.Ct. at 995–96. In this case, there is little reason to doubt that Reynolds made the statements to which Eaton testified at the suppression hearing. Eaton was assigned to Boyce's case in conjunction with a special project between the St. Louis Police Department and the Bureau of Alcohol, Tobacco, and Firearms concerning firearms violations, and thus was very familiar with the facts. Many of the statements are memorialized in Reynolds's police report, which was readily available to Eaton. Eaton testified that the remaining statements derived from a conversation between him and Reynolds. Boyce has not shown anything that would cast doubt upon Eaton's credibility, which was bolstered by Eaton's having filed a written report about his interview with Reynolds. We note further that Boyce took full advantage of his right to cross-examine Eaton at the suppression hearing. Suppression Hearing Transcript at 10 to 25 & 26 to 28. *See United States v. Green,* 670 F.2d 1148, 1154 (D.C.Cir. 1981). In addition, Boyce had the opportunity to confront and to cross-examine Reynolds at trial. We conclude that Reynolds's absence from the suppression hearing did

not violate Boyce's right to confront and cross-examine the witnesses against him.

### III.

Boyce contends that he was denied the right to a fair trial because the Assistant United States Attorney made a statement during the rebuttal portion of his closing argument that vouched for Reynolds's testimony that Reynolds did not draw his weapon on Boyce. The prosecutor made the statement at issue in response to Boyce's closing argument attacking the credibility of Reynolds's testimony that he did not draw his gun when he noticed the rifle in the car and when Boyce reached inside a bag for ammunition. The prosecutor said:

> I handle all the Civil Rights complaints in this district and we get a lot of them about officers being trigger happy and Ray Reynolds was doing what a good officer does, he wasn't drawing his gun if it wasn't necessary and it wasn't necessary because he had the door—do you really believe this guy could knock Ray Reynolds at six foot four out of the way? Do you think he could get the leverage to do it? Ray Reynolds was in the position where he had control of the situation, he felt in control, he did what a good officer does. He didn't just draw a gun, he didn't become a cowboy. He acted like a sane proper officer. If he'd done anything else, he could have been in trouble with me.

Trial Transcript (T. Tr.) at 2–23.[2] Defense counsel objected, but the District Court overruled the objection and did not instruct the jury to disregard the prosecutor's statement.

When reviewing a prosecutor's comments to determine if they "warrant the granting of a new trial, we consider: (1) whether the remarks were improper, and (2) whether they prejudicially affected substantive rights of the appellants." *United States v. Cole*, 755 F.2d 748, 767 (11th

Cir.1985); *see United States v. Lee*, 743 F.2d 1240, 1254 (8th Cir.1984) (reversal only if the argument reasonably could have affected the jury verdict); *United States v. King*, 616 F.2d 1034, 1040 (8th Cir.) (same), *cert. denied*, 446 U.S. 969, 100 S.Ct. 2950, 64 L.Ed.2d 829 (1980). We consider improper prosecutorial argument not in a vacuum, but "in the context of the entire trial." *United States v. Dawkins*, 562 F.2d 567, 568 (8th Cir.1977) (per curiam).

We believe that the prosecutor's statements in this case were improper. The comments in question tend to convey to the jury a message that the prosecutor had knowledge outside of the evidence presented at trial that confirmed Reynolds's testimony. Such statements are inappropriate and unwarranted. *See Gradsky v. United States*, 373 F.2d 706, 709–10 (5th Cir.1967); *McMillian v. United States*, 363 F.2d 165, 168–69 (5th Cir.1966). Closing arguments should be based upon the facts in evidence and reasonable inferences therefrom, and should not assert factual propositions for which there is no evidentiary support. *See United States v. Ojala*, 544 F.2d 940, 946 (8th Cir.1976).

Having found the prosecutor's comments improper, we must decide whether these comments, in light of the entire record, deprived defendant of a fair trial. *United States v. Hernandez*, 779 F.2d 456, 460 (8th Cir.1985). We consider three factors in this analysis: "(1) the cumulative effect of such misconduct; (2) the strength of the properly admitted evidence of the defendant's guilt; and (3) the curative actions taken by the trial court." *Id.* Regarding the first factor, Boyce points to only one improper statement, which came at the very end of the trial. He does not contend that the statement had any cumulative effect on the jury. Moreover, the District Court had instructed the jury that the attorneys' arguments were not evidence, T. Tr. at 1–4, 2–9 & 2–13, and that the jury should rely on their own recollec-

**2.** The first number in the trial transcript page designation refers to the volume, i.e., 2–23 refers to page 23 in volume 2.

tions of the facts and make their own assessments of the credibility of the witnesses. *Id.* at 2–28 & 2–32.

As to the second factor, we find that the strength of the evidence against Boyce mitigates against a conclusion that the prosecutor's comments deprived Boyce of a fair trial. After reviewing the trial record, we conclude that ample evidence exists to support the jury's verdict. We also observe that Boyce, contrary to his counsel's closing argument, had testified that Reynolds did not draw his gun. T. Tr. at 1–124. Thus, Boyce's counsel was guilty of improper argument in attacking Reynolds's credibility on that point.

"Ideally, the trial court should give a cautionary instruction to the jury immediately after the misconduct occurs." *Hernandez*, 779 F.2d at 461. That did not occur in this case. However, because of the lack of any cumulative prosecutorial misconduct and in view of the strength of the case against Boyce, we find that the prosecutor's closing argument did not render Boyce's trial unfair. Moreover, since both Boyce and Reynolds testified that Reynolds did not draw his weapon, we believe that this issue borders on being a frivolous one.

For the reasons set forth above, we affirm Boyce's conviction.