896 F.2d 1368
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Larrence WHYTE, Defendant-Appellant.
 No. 89-5129.
 United States Court of Appeals, Fourth Circuit.
 Argued: Dec. 6, 1989.
Decided: Feb. 14, 1990.
 
 David Thomas Williams (William B. Cummings, P.C., on brief), for appellant.
 Janet Woehl Reincke (Henry E. Hudson, United States Attorney; David Rosenberg, Special Assistant United States Attorney; Constance H. Frogale, Assistant United States Attorney, on brief), for appellee.
 Before ERVIN, Chief Judge, and K.K. HALL and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Larrence Anthony Whyte appeals from his conviction on one count of possession with intent to distribute 50 or more grams of crack cocaine, 21 U.S.C. Sec. 841(a)(1). He contends that he was deprived of a fair trial because of prosecutorial misconduct. Finding no merit to this contention, we affirm.
 
 
 2
 * Whyte was arrested on December 8, 1988, at Washington National Airport. The government's evidence at trial was that two local police detectives assigned to the Drug Enforcement Administration Task Force ("DEA") were at the airport observing passengers deplane from the Eastern Airlines New York Shuttle. Whyte was walking in a stiff robot-like manner when he left the plane. The DEA agents followed him outside to a taxi stand where he stood next to a second man, later identified as Wayne Mason. Whyte and Mason consented to a search of their bags and Whyte also consented to a search of his person. Detective Bernier found a hard object in the crotch of Whyte's pants. The object was a plastic bag containing a white napkin inside which was a cream-colored lumpy substance which subsequent laboratory testing showed to be approximately 73 grams of 87% pure cocaine base, or crack.
 
 
 3
 At trial, Whyte gave a different version of events. He testified that he had gone to Washington to paint a relative's house. As he waited outside the airport for a ride, he was approached by Detective Bernier who asked to search his bag, claiming that Whyte resembled a man who had recently dropped some drugs in the airport as he fled. Whyte testified that the detective searched both his bag and person and found nothing but took him to the police station anyway. A second search was conducted by Detective Allen and again no drugs were found. Appellant testified that Detective Bernier arrested him because "he has been coming down here killing and robbing people." Wayne Mason, who was also arrested, testified that he did not see the detectives find any drugs on Whyte when they searched him.
 
 
 4
 On this conflicting evidence, Whyte was convicted by a jury of possession with the intent to distribute 50 or more grams of crack in violation of 21 U.S.C. Sec. 841(a)(1) and was sentenced to 121 months in prison and 60 months of supervised release. He appeals.
 
 II
 
 5
 During the trial, the prosecutor questioned Special Agent John Cornille of the DEA as an expert witness about the practice and techniques of drug trafficking and use. Agent Cornille testified that he was familiar with the distribution of crack in the Washington, D.C., metropolitan area; that cocaine comes from South America and is processed into crack in the United States; that the source cities for the Washington area include New York, Miami and Los Angeles; and that the dosage of crack sold on the street ranges from approximately 80 milligrams to 250 milligrams. Agent Cornille also testified about the chain of distribution of crack and that the amount of crack recovered in this case was consistent with distribution. Objections were sustained to questions about how crack is produced and the cost of one dose of crack on the street. The court also sustained an objection to the prosecutor's question: "If there were no couriers bringing crack cocaine from New York down to Washington, D.C., what would happen to the flow of crack into the city?"
 
 
 6
 Later, during the rebuttal portion of his closing argument, the prosecutor made the following statements to which the court overruled an objection: "These agents put their lives on the line in a dangerous business. All we have to do to find out what crack is doing is to look at school children and others in our community." Whyte contends that the prosecutor's repeated questioning of Agent Cornille regarding the crack industry and the statements made in closing argument violated his due process rights and prevented him from receiving a fair trial.
 
 
 7
 "The test for reversible prosecutorial misconduct generally has two components: that '(1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial.' " United States v. Brockington, 849 F.2d 873, 875 (4th Cir.1988), quoting United States v. Hernandez, 779 F.2d 456, 458 (8th Cir.1985).
 
 
 8
 We do not believe the prosecutor's questioning of its expert witness, Agent Cornille, was improper. Although the prosecutor engaged in repetitive questioning of the witness about the crack trade in general as opposed to Whyte's conduct in this particular case, we see nothing improper in this line of questioning. When the prosecutor hammered the nail too hard, the district court sustained objections to several questions. Under the circumstances, we can discern no prejudice to Whyte.
 
 
 9
 The government concedes that the prosecutor's remarks during closing argument were improper. We agree that the prosecutor went too far in his remarks. Again, however, even though the remarks were improper, we do not find that they prejudicially affected Whyte's substantial rights so as to deprive him of a fair trial. The remarks were isolated comments made during the government's argument of the detectives' credibility. We do not believe they had the effect of misleading the jury to Whyte's prejudice. Therefore, this case does not warrant reversal.
 
 
 10
 Accordingly, the judgment is affirmed.
 
 
 11
 AFFIRMED.