**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Robert B. MARX, Defendant–Appellant.**

**No. 92–1192.**

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 11, 1992.

Decided March 18, 1993.

As Amended on Denial of Rehearing and Rehearing En Banc April 29, 1993.

Danny R. Smeins, Britton, SD, for defendant-appellant.

Ted L. McBride, Asst. U.S. Atty., Sioux Falls, SD, for plaintiff-appellee.

Before JOHN R. GIBSON and MAGILL, Circuit Judges, and VAN SICKLE *, Senior District Judge.

JOHN R. GIBSON, Circuit Judge.

Robert B. Marx appeals his conviction of three counts of misapplication of bank funds in connection with certain loans in violation of 18 U.S.C. § 656 (Supp. III 1991), two counts of money laundering in connection with two of the loans in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (1988), and three counts of false entry on bank records, in violation of 18 U.S.C. § 1005 (Supp. III 1991). Marx was a director and half owner of the Marshall County Bank in

---

* The Honorable Bruce M. Van Sickle, United States Senior District Judge for the District of North Dakota, sitting by designation.

South Dakota. At trial, the government showed that Marx borrowed money from the bank in the name of business entities that he controlled, but used the money for purposes other than those stated in the loan documents. He also procured a loan nominally made to one Leon Reis, but Marx himself actually received the money. The government also showed that he falsified a loan comment sheet, changed the stated purpose of a note, and forged a guarantee in connection with another loan. Marx argues on appeal that the misapplication, misstatement, and money laundering counts were not supported by sufficient evidence; and that the district court[1] erred in instructing the jury on the misapplication and money laundering counts, in answering jury questions, in refusing to admit certain defense exhibits, in adjusting his offense level by two points for obstruction of justice under United States Sentencing Commission, *Sentencing Guidelines*, § 3C1.1 (Nov. 1991), and in denying a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1 (1991). We affirm the judgment of conviction and the sentence imposed.

Marx was a tax accountant, who was involved in a variety of businesses in northern South Dakota from banking to bowling alleys. The facts of this case are unusually complicated because Marx held his various concerns through sundry corporations, subsidiaries, and holding companies, and also exercised control over other corporations he did not own. Marx's protégé, Todd Smith, described Marx as someone who believed in "pressing the gray areas."

In 1985, Marx and another investor, Dr. Dorsett, purchased the Bank of Marshall County. Until the bank closed in 1988, Larry Keyes served as president and Marx served as a director. Keyes and Marx were the only two members of the Bank's board who were knowledgeable about banking. The indictment against Marx arose out of loans the Bank made that were ultimately used for the benefit of Marx and his various concerns. Up until the time Marx acquired his interest in the

Bank, the Bank had never written off a loan.

One of Marx's businesses, Hunters, Inc., which owned a bowling alley, restaurant, and bar, obtained a $120,000 loan from the Bank on November 14, 1986. Marx signed the papers on behalf of the corporation, and "business capital" was the stated purpose on the note. At trial, Keyes testified that borrowing money for "business capital" meant that the funds would be used for improvements to the business. Marx, however, used the loan proceeds to pay off personal debts or debts of his other unrelated corporations. Marx claimed that Hunters, Inc. owed him the money, but Steve Dutenhoffer, a bank vice president and loan officer, testified that repayment of an existing debt should be described as "loan refinance," and is not consistent with using loan proceeds for "business capital."

The second transaction at issue was a $120,000 loan from the Bank to Browns Valley Community Nursing Home, which Marx managed and controlled, but did not own. Marx applied for the loan and signed the papers for the nursing home, stating that the loan was for "business operating purposes." Marx, however, diverted all but $900 to his personal use and to the use of his other unrelated corporations.

The third transaction was a nominee or "strawman" loan arranged by Marx, in which Leon Reis borrowed money from the bank in order to lend the same money to Marx. Reis participated in this transaction because he was out of work and Marx offered him the position of president at one of Marx's banks on the condition that Reis obtain the loan.

Finally, the three misstatement convictions arose out of another loan in which Downstate Co., a corporation owned by Marx and a friend of Marx's, Frank Farrar, borrowed money from the Bank. The loan took place in 1986 and the note originally stated that the purpose of the loan was to purchase Marshall Bancorporation, Inc. In April 1988, during the first day of the FDIC's examination of the Bank, Marx and the Bank staff saw that the examiners

1. The Honorable Richard H. Battey, United States Judge for the District of South Dakota.

were particularly interested in the bank's insider transactions. That evening Marx drafted a comment sheet for the Downstate loan and backdated it to September 30, 1986. At trial, Keyes testified that backdating was misleading and that the comment sheet should have been dated the day on which it was created, April 7, 1988. At Marx's direction, Keyes altered the statement of purpose on the Downstate note from "purchase Marshall Bancorporation" to "purchase the Veblen Insurance Agency." Also, the Bank had lent Downstate the money without Frank Farrar's guarantee. During the April 1988 examination Marx presented the Bank with a personal guarantee purportedly signed by Farrar; Marx instructed the Bank's president, Keyes, to attest to Farrar's signature, which Keyes did even though he had not seen Farrar sign. At trial, Marx admitted signing the guaranty without Farrar's authority to do so.

Marx was sentenced to concurrent terms of five years and sixty-three months on the several counts, and the sentence was calculated by including an obstruction of justice enhancement under U.S.S.G. § 3C1.1.

### I.

Marx argues that the evidence was not sufficient to convict him. He makes one specific argument—that he did not participate in the loans in his capacity as a director—as well as several pages of numerous conclusory arguments, for the most part lacking transcript references.

■ When we review the sufficiency of the evidence to support a jury verdict, we view the evidence in the light most favorable to the government, and affirm if there is substantial evidence to support the jury

verdict. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Long*, 952 F.2d 1520, 1524–25 (8th Cir.1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 298, 121 L.Ed.2d 222 (1992).

■ Relying on *United States v. Dreitzler*, 577 F.2d 539, 546 (9th Cir.1978), *cert. denied*, 440 U.S. 921, 99 S.Ct. 1246, 59 L.Ed.2d 473 (1979), Marx argues that there is an additional element to section 656, requiring not only that he be a director and misapply bank funds, but that he do so acting in his capacity as director. *See also United States v. McCright*, 821 F.2d 226, 230 (5th Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 697, 98 L.Ed.2d 649 (1988). *Dreitzler*, however, actually supports a more modest requirement, that there be evidence that "bank funds were misapplied by virtue of the fact the defendant was connected in some capacity with a bank which enables him to gain access to bank funds." 577 F.2d at 547. This additional element does not appear in the statute itself, and we have not explicitly adopted *Dreitzler*.[2]

All this said, we conclude that the evidence was sufficient to show that the loans resulted from Marx's connection to the bank as director and owner. In all three cases, Marx brought the loan to the Bank. Marx was both a shareholder and director of a small bank, in which the only other board member knowledgeable about banking, Keyes, was an employee, dependent on Marx's good graces for his job. Keyes was the loan officer for all three loans. Keyes stated that he failed to follow normal banking procedures and applied a lenient standard in approving Marx's loan because of

---

**2.** The issue was raised in *United States v. Mohr*, 728 F.2d 1132, 1135 (8th Cir.), *cert. denied*, 469 U.S. 843, 105 S.Ct. 148, 83 L.Ed.2d 87 (1984), and we held that there was adequate evidence that an officer who benefitted from a nominee loan also authorized the loan. Since the evidence of connection between insider status and the loan was sufficient, we were not required to decide whether the conviction could be upheld in the absence of such evidence.

A similar, but distinct, question is whether a person who is not an officer, director, agent, or

employee of a bank is nevertheless "connected in any capacity" with it, so as to be subject to section 656 at all. *See, e.g., United States v. Coney*, 949 F.2d 966, 967 (8th Cir.1991); *United States v. Davis*, 953 F.2d 1482, 1488–90 (10th Cir.) (applying 18 U.S.C. § 657), *cert. denied*, —— U.S. ——, 112 S.Ct. 2286, 119 L.Ed.2d 210 (1992); *Garrett v. United States*, 396 F.2d 489, 490–91 (5th Cir.), *cert. denied*, 393 U.S. 952, 89 S.Ct. 374, 21 L.Ed.2d 364 (1968).

Marx's relationship to the bank. In the case of the Reis loan, Marx brought in a loan proposal falsely stating that the loan was to be used for Reis to pay off a real estate mortgage on an apartment house. Marx promised that Reis would assign a note to the Bank as collateral, but Keyes disbursed the loan without in fact getting the collateral. Thus, Marx exerted influence over the Bank because of his ownership, and he was the prime mover behind the three transactions in question. The evidence shows the same kind of relationship between the bank, insider, and loan that supported the section 656 conviction in *Dreitzler*, 577 F.2d at 547. *See United States v. Rochester*, 898 F.2d 971, 978 (5th Cir.1990) (upholding section 657 conviction where advisory director discussed the loan with the board, brought the loan to the bank, and encouraged the bank to make the loan).

■ As for Marx's more general argument that the evidence is insufficient, the record plainly supports the conclusions that Marx caused the Bank to make three loans that he knew would be applied for his personal benefit contrary to the representations made in the loan documents and that he falsified the loan documents for the Downstate, Inc. loan to mislead the FDIC examiners. The evidence we have recounted supports the misapplication and misstatement convictions. *See United States v. Parsons*, 646 F.2d 1275, 1280 (8th Cir. 1981) (strawman loan for the benefit of a bank insider supports a section 656 conviction because it permits the inference that the deception was for the purpose of defeating limits on insider loans); *United States v. Shively*, 715 F.2d 260, 267 (7th Cir.1983) (participation in conspiracy to violate section 656 established by falsely stating purpose of loan), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1001, 79 L.Ed.2d 233 (1984); *United States v. Castro*, 887 F.2d 988, 994–95 (9th Cir.1989) (misapplication consisted of taking kickbacks and submitting false information on loan application). The evidence also supports the inference that the loan transactions were arranged so as to disguise the control of the proceeds of the section 656 violation, thus supporting the money laundering convictions. *See* 18 U.S.C. § 1956(a)(1)(B)(i).

## II.

■ Marx complains of two errors in the jury instructions. First, he argues that the district court should have given an instruction summarizing the law of 18 U.S.C. § 656 and requiring that the jury convict him only if: (1) the named or nominal borrower was fictitious or did not consent to the loan; (2) the lender knew that the named or nominal borrower was financially incapable of repaying the loan; or (3) the lender agreed to or looked only to the third party who received the funds for repayment of the loan. Marx relies on *United States v. Gens*, 493 F.2d 216 (1st Cir.1974), for the proposition that only the sorts of nominee loans mentioned in his proposed instruction can support a section 656 conviction. To the extent that *Gens* supports Marx's argument, it is not the law in this circuit. In *Parsons*, 646 F.2d at 1280, and *United States v. Steffen*, 641 F.2d 591, 597 (8th Cir.), *cert. denied*, 452 U.S. 943, 101 S.Ct. 3091, 69 L.Ed.2d 959 (1981), we held that when the person who gets the money from a nominee loan is a bank insider, the transaction may be found to have been undertaken with the intent to defraud the bank or deceive its officers or examiners even though the named borrower was able to repay and understood his obligation to do so. In such a case:

[a] jury might plausibly deduce that the bank officer, by channeling the funds through another party, sought to conceal from the bank his own interest in the transaction and thereby to circumvent the barrier—imposed by both the statute [12 U.S.C. § 375a (1988) [3]] and the bank's own regulations—to the bank's making the particular loan directly to him ....

---

3. Even though section 375a only applies to executive officers, not directors or shareholders such as Marx, 12 U.S.C. § 375b (Supp. III 1991) contains other insider loan limitations that would apply to Marx.

... Moreover, by concealing the fact that he is the real beneficiary of the loan, the bank officer has deceived the other bank officers and agents who are appointed to examine the affairs of the bank and who are entitled to be kept informed of all loans to bank officers so that they may properly fulfill their duties.

*United States v. Krepps*, 605 F.2d 101, 106 (3d Cir.1979). Therefore, the district court correctly refused Marx's requested instruction.

■ Marx also objects to the instruction defining "intent to injure or defraud or deceive bank officers, directors, or examiners" as "intent to deceive or to cheat the bank—ordinarily for the purpose of either causing a financial gain or a financial loss to someone or something." Marx argues that the instruction permits the jury to find him guilty if his action was intended to injure anyone—not just the bank, but anyone. A district court has considerable discretion in framing the language of jury instructions, as long as the charge, taken as a whole and viewed in light of the evidence, fairly and adequately states the law. *United States v. Ribaste*, 905 F.2d 1140, 1143 (8th Cir.1990). The instruction here specifically requires that the defendant act with intent "to deceive or to cheat the bank." Taken as a whole, we do not believe this instruction could confuse the jury as Marx argues.

### III.

Marx complains that the district court erred in refusing to admit three exhibits. "We review district court decisions on the admissibility of evidence under an abuse of discretion standard." *United States v. Prouse*, 945 F.2d 1017, 1025 (8th Cir.1991).

■ With respect to the Downstate, Inc. loan, Marx was convicted of falsifying bank records in order to deceive the FDIC. Marx offered a Downstate balance sheet to prove that the Bank need not have sustained a loss on that loan. Marx argues that the offered exhibit would have shown

that Marx did not intend to injure or defraud the Bank because Downstate was able to repay the loan. Section 1005 permits conviction for falsifying bank records if the defendant intended to injure or defraud the bank *or* to deceive the examiners (among others). 18 U.S.C. § 1005. The jury instruction did not include the "injure or defraud" alternative; instead, it premised conviction on a finding of intent to deceive the FDIC. Because the Downstate balance sheet is not relevant to the issue of intent to deceive, the court properly excluded it.

Marx also complains that the district court excluded another Downstate balance sheet which would have tended to prove that he forged the Farrar guarantee in June 1988, not April 1988. This could not have helped Marx, and the argument borders on the frivolous.

Marx next argues that the district court excluded a financial statement offered to impeach a witness, Dr. Dorsett, who Marx claims agreed to purchase the assets of Hunters, Inc. and therefore owed Hunters money. Whether this transaction took place is not relevant to any element of Marx's crime, and the district court did not err in refusing to permit impeachment on a collateral issue. *See United States v. May*, 727 F.2d 764 (8th Cir.1984).

### IV.

■ Marx also appeals the district court's addition of two points to his guidelines offense level for obstruction of justice, U.S.S.G. § 3C1.1, and the court's denial of a reduction for acceptance of responsibility, U.S.S.G. § 3E1.1, based on the court's finding that Marx perjured himself at trial. The district court concluded that conflicts between Marx's testimony and that of other witnesses concerning the creation of false documents were the result of purposeful deception by Marx. *United States v. Marx*, No. CR91–10003–01, slip op. at 12 (D.S.D. Jan. 8, 1992). Marx claims that the court erred in resolving

conflicts in his and other witnesses' testimony in favor of the other witnesses.

Perjury has been held to constitute obstruction of justice, for purposes of U.S.S.G. § 3C1.1, *United States v. Dunnigan*, — U.S. —, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993), and we review the district court's credibility determination for clear error. *United States v. Dyer*, 910 F.2d 530, 533 (8th Cir.), *cert. denied*, 498 U.S. 907, 111 S.Ct. 276, 112 L.Ed.2d 232 (1990). Similarly, we reverse the district court's finding on acceptance of responsibility only if it is without foundation. *United States v. Grimes*, 899 F.2d 731, 732 (8th Cir.), *cert. denied*, 498 U.S. 986, 111 S.Ct. 521, 112 L.Ed.2d 532 (1990). We have reviewed the record and conclude that the district court's conclusion that Marx lied is not clearly erroneous and that the court did not err in its guidelines rulings.

### V.

Marx contends that the district court responded improperly to questions the jury raised during the deliberations.

■ The jury submitted a question to the court asking, "If a unanimous agreement cannot be reached is our verdict then 'not guilty' or do we proceed in another fashion?" The court advised the jury that they all had to agree before they could bring in either a "not guilty" or "guilty" verdict, but did not advise them about the possibility of a hung jury. The court's response to the jury was consistent with that approved in *United States v. Arpan*, 887 F.2d 873 (8th Cir.1989) (en banc). There is no error here.

■ The jury also asked whether in determining the existence of "intent to injure and defraud" they were to "look at the original loan or at the end result." The court gave a neutral response, restating an instruction given earlier: "[Y]ou may consider any statements made and other acts done by defendant and all facts and circumstances in evidence which may aid in a determination of defendant's intent." Marx argues that this response permitted the jury to convict on the grounds that the loans were not repaid, rather than because they were initially misapplied. This reads too much into a very vague question. It is difficult to tell exactly what the jury was asking for and the judge's decision to reiterate the correct, previously given instructions was reasonable, and by no means an abuse of discretion.

### VI.

Marx raises several arguments in a pro se brief. Ordinarily, under Eighth Circuit policy, when a party is represented by counsel, we will not accept pro se briefs. *United States v. Payton*, 918 F.2d 54, 56 n. 2 (8th Cir.1990), *cert. denied*, — U.S. —, 112 S.Ct. 395, 116 L.Ed.2d 345 (1991). However, Marx received permission from this court to file his brief, so we have examined his arguments. Marx's pro se filings appear to say that the district court failed to read the jury instructions aloud to the jury. The judge's charge to the jury was not transcribed by the court reporter, but we have ascertained from other sources, including the court clerk's minutes, the court reporter, the assistant United States Attorney and Marx's own lawyer, that the court in fact read aloud to the jury the complete set of instructions.

The other issues Marx raises in his pro se brief have no merit.

We affirm the conviction and sentence.