UNITED STATES of America, Appellee,

v.

**Jesse L. HALE, Appellant.**

UNITED STATES of America, Appellee,

v.

**Adrian Cedrick WALLER, Appellant.**

Nos. 93–1008, 93–1230.

United States Court of Appeals,
Eighth Circuit.

Submitted June 16, 1993.

Decided Aug. 3, 1993.

R. Thomas Day, St. Louis, MO, argued for appellant Hale.

Joseph Cordell, St. Louis, MO, argued for appellant Waller.

Richard Poehling, Asst. U.S. Atty., St. Louis, MO, argued, for appellee.

Before WOLLMAN and LOKEN, Circuit Judges, and HUNTER,* Senior District Judge.

* The HONORABLE ELMO B. HUNTER, Senior United States District Judge for the Western District of Missouri, sitting by designation.

WOLLMAN, Circuit Judge.

Jesse L. Hale appeals from his conviction in district court[1] for carrying a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). Adrian C. Waller appeals from his sentence for distributing cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 18 U.S.C. § 2. We affirm.

## I.

On the evening of March 30, 1992, St. Louis County police were investigating complaints of drug dealing in the Meacham Park area of St. Louis County. Detective Tommy Marr was the designated undercover buyer that night. Marr was backed up by a surveillance officer, Detective Kirk Lloyd, and an arrest team, which included Sergeant James Vollmar, Detective Robert Bayes, and Detective Michael Hutcherson.

While driving an unmarked car, Marr stopped alongside a curb and spoke with Waller about purchasing crack cocaine. After a brief conversation, Waller entered the car and directed Marr to a town house apartment. Upon arriving at the apartment, Waller waved over Hale and Junius Rucker, II, who were standing in front of the apartment. When Hale and Rucker arrived at the car, Rucker asked Marr what he wanted. Marr responded that he wanted to purchase two "twenty pieces." (A twenty piece is a piece of crack cocaine that sells for twenty dollars.) Rucker then nodded to Hale, who exchanged with Marr two pieces of crack cocaine for forty dollars. Marr and Waller then left.

Detective Lloyd observed the transaction from his surveillance position and listened to it through the body microphone worn by Marr. When the transaction had been completed, Lloyd directed Vollmar, Bayes, and Hutcherson to arrest Hale and Rucker. As the three officers moved in and identified themselves, Hale and Rucker began sprinting toward the apartment. Hale pulled a revolver from his waistband as he ran. The three officers followed Rucker and Hale into the apartment, which was occupied by several individuals. Upon entering the apartment, Hale threw the revolver onto a table, from which it fell to the floor. Officer Bayes tackled Hale and subdued him. After Hale had been controlled, Bayes picked up the gun, a loaded .38 caliber revolver. In the meantime, Vollmar followed Rucker to the upstairs area of the apartment and arrested him there.

Count I of the grand jury's indictment charged Hale, Waller, and Rucker with having distributed cocaine base; Count II charged that Hale had carried a firearm during a drug trafficking crime. Hale and Waller pled guilty to Count I. Hale and Rucker were then tried jointly before a jury, Rucker on Count I and Hale on Count II.

Testifying on behalf of Hale and Rucker, the individuals present in the apartment when the police arrived related a somewhat different version of the events. According to them, Hale and Rucker were inside the apartment when Waller came to the apartment looking for Hale. Hale left the apartment for several minutes and then returned, followed by a police officer giving chase. The defense witnesses testified that they had not seen the gun in the apartment before Hale re-entered the apartment.

The jury acquitted Rucker and convicted Hale. The district court sentenced Hale to a twenty-four month prison term on the distribution charge and to a consecutive sixty month prison term on the firearms charge, to be followed by three years of supervised release.

## II.

Hale moved for a mistrial in response to the prosecutor's statement during closing argument that two of the defense witnesses had lied about not speaking with other witnesses concerning their testimony. Contending that the prosecutor improperly stated his personal belief concerning the witnesses' credibility, Hale argues that the district court erred in denying the motion for mistrial.

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

■ We review the district court's denial of a motion for a mistrial under the abuse of discretion standard. *See, e.g., United States v. Hernandez,* 779 F.2d 456, 458 (8th Cir.1985). To reverse a conviction for prosecutorial misconduct, we must find both that the prosecutor's remarks were in fact improper and that they were so offensive as to deprive the defendant of a fair trial. *Id.* at 458, 460. In determining the effect of alleged prosecutorial misconduct, we typically examine three factors: (1) the cumulative effect of the misconduct; (2) the strength of the evidence against the defendant; and (3) the curative actions taken by the trial court. *Id.* at 460.

■ Applying the foregoing factors, we conclude that the prosecutor's remarks did not have a significant effect on the fairness of Hale's trial. The challenged remarks were brief and relatively innocuous and concerned a collateral matter rather than the witnesses' substantive testimony. The government's evidence against Hale was substantial, if indeed not overwhelming. The district court's jury instructions helped alleviate any potential prejudice from the prosecutor's remarks by informing the jury that the evidence consisted only of the witnesses' testimony and documents received into evidence and that attorney comments during closing argument were not evidence. The court also informed the jurors that they were the sole judges of witness credibility.

■ Hale also argues that the prosecutor improperly misstated the burden of proof during his closing argument. Because Hale did not object at trial to this portion of the prosecutor's argument, we review only for plain error, Fed.R.Crim.P. 52(b); *United States v. Burk,* 912 F.2d 225, 229 (8th Cir. 1990), and we find that the prosecutor's argument did not rise to that level, if indeed it constituted error at all.

### III.

We turn next to Waller's appeal. On the basis of .33 grams of crack cocaine (the amount that Hale sold to Marr), Waller's base offense level was 14. The district court granted Waller a two-level downward adjust-

ment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). Based on a total offense level of 12 and a criminal history category of I, the court sentenced Waller to five months' imprisonment, to be followed by five months in a community corrections center and three years of supervised release.

■ Waller argues that the court erred by not granting him a two-level downward adjustment pursuant to section 3B1.2(b) for being a minor participant in the drug transaction. Waller contends that he was a minor participant because he acted merely as a "steerer," an individual who directs a potential drug purchaser to a seller.

The commentary to the guidelines provides that a minor participant is "any participant who is less culpable than most other participants" in the criminal activity. § 3B1.2 comment. (n.3). Under the stipulated facts, the district court found that Waller was not less culpable than most other participants in the crime, Hale being the most culpable, Waller the next most culpable, and Rucker the least culpable. The court noted that the crime would not have occurred had Waller not directed Marr to Hale, the ultimate seller.

■ Whether a defendant qualifies for a minor participant reduction is a question of fact, the determination of which we review for clear error. *See, e.g., United States v. Harris,* 974 F.2d 84, 86 (8th Cir.1992). Steerers play an important and critical role in the street-level drug trade, directing prospective buyers to sellers who wish to remain hidden from public view. *See United States v. Colon,* 884 F.2d 1550, 1552 (2d Cir.1989) (discussing the role that steerers play in the drug market). Indeed, absent Waller's role as a steerer in this case, the transaction between Marr and Hale would not have occurred. Waller brought a purchaser with a specific demand to a furtive seller who could fulfill that demand. Additionally, we note that Waller did more than inform Marr where he could purchase drugs. He entered Marr's car, accompanied him to the apartment, and signaled for Hale and Rucker. *Cf. United States v. Sostre,* 967 F.2d 728, 732 (1st Cir.1992) (holding that the district court did not err in denying a minor participant

reduction under similar facts). Last, we note that Waller's sentence was calculated on the basis of the relatively small quantity of drugs sold in the transaction that he facilitated. Thus, this case is not one in which the defendant played a small role in a transaction involving a large amount of drugs. Under these facts, we find that the district court did not err in denying Waller a minor participant reduction.

Accordingly, Hale's conviction and Waller's sentence are affirmed.