# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

_____

No. 97-2825

_____

United States of America,               *
                                         *
          Plaintiff - Appellee,          *
                                         *
     v.                                  *
                                         *
Jesse Puckett,                           *
                                         *
          Defendant - Appellant,         *


_____

No. 97-3095

_____

|  |  |
|---|---|
| | Appeals from the United States District Court for the Southern District of Iowa. |

United States of America,               *
                                         *
          Plaintiff - Appellee,          *
                                         *
     v.                                  *
                                         *
Lyndon Simmons,                          *
                                         *
          Defendant - Appellant,         *


_____

No. 97-3096

_____

United States of America,                    *
                                             *
           Plaintiff - Appellee,             *
                                             *
    v.                                       *
                                             *
Deleon Gadison,                              *
                                             *
           Defendant - Appellant,            *

     _____

     No. 97-3098
     _____

United States of America,                    *
                                             *
           Plaintiff - Appellee,             *
                                             *
    v.                                       *
                                             *
George Harper,                               *
                                             *
           Defendant - Appellant,            *

     _____

     No. 97-3100
     _____

United States of America,                    *
                                             *
           Plaintiff - Appellee,             *
                                             *
    v.                                       *
                                             *
Tyrone Redmond, also known as

Isaac Thomas,                          *
                                       *
         Defendant - Appellant,        *


         _____

         No. 97-3184
         _____

United States of America,              *
                                       *
         Plaintiff - Appellee,         *
                                       *
v.                                     *
                                       *
Jessica Sparlin,                       *
                                       *
         Defendant - Appellant.        *


                        _____

                Submitted: April 16, 1998
                 Filed: June 26, 1998
                        _____

Before BOWMAN, Chief Judge,[1] McMILLIAN and MURPHY, Circuit Judges.
                        _____

MURPHY, Circuit Judge.

     Jesse Puckett, Lyndon Simmons, Deleon Gadison, George Harper, Tyrone
Redmond, and Jessica Sparlin appeal their convictions for conspiracy to distribute

_____

     [1]The Honorable Pasco M. Bowman became Chief Judge of the United States
Court of Appeals for the Eighth Circuit on April 18, 1998.

cocaine base or crack, 21 U.S.C. § 856, possession of crack with intent to distribute, and opening and maintaining a place where controlled substances are distributed, 21 U.S.C. § 846. They raise issues of sufficiency of the evidence and related to the denial by the district court[2] of motions for suppression, a mistrial, dismissal of the indictment, and a new trial. Redmond, Harper and Sparlin also appeal their sentences and challenge the court's calculation of the amount of drugs, its enhancement for leadership role, and the extent of its downward departure.[3] We affirm.

## I.

Evidence at trial showed that the defendants were involved in a crack business operating in Clinton, Iowa from around January, 1995 when Harper and Gadison arrived there from Chicago. Puckett and Simmons followed in the spring of 1996, and Redmond joined them in May. Harper was the leader of the conspiracy, obtaining the drugs and directing distribution efforts. Gadison had direct control over Puckett, Simmons, Redmond, and other distributors, and he reported to Harper. Jessica Sparlin assisted Gadison by selling and transporting drugs, handling money, obtaining pagers and cars, and by procuring twelve different apartments used to deal drugs at various times during the conspiracy. After an eight day trial, the jury acquitted Harper of one charge but found him and the other defendants guilty of all remaining charges in the twenty count indictment.

---

[2]The Honorable Charles E. Wolle, Chief Judge, United States District Court for the Southern District of Iowa.

[3]Harper, Puckett, and Redmond have all filed pro se briefs in addition to the submissions of counsel. We ordinarily will not consider pro se filings by individuals who are represented by counsel, and we see no reason to do so here. See United States v. Marx, 991 F.2d 1369, 1375 (8th Cir. 1993).

At the sentencing hearing the district court calculated the amount of drugs attributable to the conspiracy based on the testimony at trial, the length of the conspiracy, and the money and drugs seized from conspirators. It found that the conspiracy involved one kilogram of crack. It enhanced Harper's sentence by four levels for his leadership role in the offense and sentenced him to 330 months imprisonment. Gadison and Simmons each were sentenced to 360 months, and Redmond received a life sentence. The court initially sentenced Sparlin to 61 months, but modified the sentence to 57 months after considering a previous stipulation of the parties; both sentences reflected a downward departure.

## II.

### A.

Defendant Harper challenges the sufficiency of the evidence for his conviction on count 12 which charged distribution of a controlled substance on May 23, 1996. He argues that this conviction should be reversed and the charge dismissed because the government offered no evidence to support it. On appeal we must view the evidence most favorably to the verdict, accept all reasonable inferences in support of it, and uphold the conviction if the jury's verdict is supported by substantial evidence. See United States v. Black Cloud, 101 F.3d 1258, 1263 (8th Cir. 1996). The record shows that Harper sold crack to a government informant twice on May 23. Each time the informant returned to the police with the crack he had purchased, and the transactions were recorded and the recordings were admitted into evidence at trial. This is sufficient to uphold Harper's conviction for distribution on May 23.

Gadison challenges the sufficiency of the evidence to convict him of knowingly opening and maintaining a place where controlled substances were distributed. See 21

U.S.C. § 856(a).[4]  Jessica Sparlin testified that Gadison directed her to rent ten different apartments for the purpose of selling or manufacturing crack, and her testimony is sufficient to support the jury's finding that Gadison was guilty of the offenses charged in counts 1, 3, 4, 5, 7, 8, 10, 15, 17, 19 and 20.

Simmons also challenges the sufficiency of the evidence to support his conviction.  He argues that most of the evidence established only his association with the other defendants and that the testimony of an informant who bought crack from him was unreliable.  The informant Leslie Schroeder testified about buying crack from Simmons several times.  On one occasion Simmons showed him four or five rocks of crack from which he could choose.  Schroeder had learned he could buy crack at a particular location when he saw Gadison and Simmons at a gas station, and Gadison gave him the information.  Another confidential informant testified that he bought four rocks of crack from Simmons while Harper was present and that Harper instructed Simmons to give the informant "a good deal" and Simmons gave Harper the money after the sale.  There was sufficient evidence to support Simmons' conviction for conspiracy and for distribution of crack, and deciding what weight to give the evidence is one of the jury's key responsibilities.

## B.

Simmons claims that the district court erred in denying his motion to suppress Schroeder's identification of him because it was unreliable in that it resulted from an impermissibly suggestive photo lineup and that his conviction should be reversed

---

[4]Gadison also asserts that § 856(a)(1) goes beyond the power granted Congress in the Commerce Clause, citing United States v. Lopez, 514 U.S. 549 (1995). Congress has specifically found that intrastate drug trafficking affects interstate commerce, see 21 U.S.C. § 801(3), however.  Section 856(a)(1) is unlike the statute in Lopez where there were no findings about interstate commerce.

because it was based only on Schroeder's testimony. See United States v. Johnson, 56 F.3d 947, 953 (8th Cir. 1995); Simmons v. United States, 390 U.S. 377, 384 (1968); Neil v. Biggers, 409 U.S. 188 (1972). After each crack transaction with Simmons, agents showed Schroeder a photograph of Simmons and asked whether the person portrayed was the individual who had conducted the sale. Simmons argues Schroeder had limited opportunity to view the seller, the seller was never introduced to Schroeder, and Schroeder initially made a mistake about how many times he had purchased crack from Simmons. We review the denial of a motion to suppress an identification de novo, see Johnson, 56 F.3d at 953, and look to whether the procedure was impermissibly suggestive and if under the totality of the circumstances "suggestive procedures created a very substantial likelihood of irreparable misidentification." Id. (citations omitted). Although the procedure here seems quite suggestive, the circumstances indicate that the identification itself was reliable. See Trevino v. Dahm, 2 F.3d 829, 833 (8th Cir. 1993). Schroeder had seen Simmons several times with coconspirators and purchased crack from him on different occasions, and the testimony of other witnesses indicates that a misidentification was unlikely. Sparlin said that Simmons was selling crack, another witness testified that she knew he was a part of the drug conspiracy, and a neighbor reported that he recognized Simmons as an acquaintance of the coconspirators. Furthermore, Schroeder's ability to identify Simmons was attacked on cross examination, and the jury had an opportunity to weigh this evidence against that in support of the identification. The district court therefore properly denied the motion to suppress, and reversal is not warranted.

## C.

Puckett, Simmons, Gadison and Redmond all contend that they are entitled to a new trial because a government witness made a reference to their gang affiliation. Prior to trial the parties stipulated that the government would not bring out evidence that the defendants were affiliated with a gang and would instruct its witnesses not to make gang references during their testimony "unless and until the defense through

questioning or evidence, makes such evidence probative on any material issue." Defense counsel asked Schroeder on cross examination how he was able to remember accurately the various drug buys he made months earlier. Counsel attempted to cut off Schroeder's response, but the court allowed him to finish and he said that he remembered the buys because "[t]hese people, they're gang-affiliated, and that scares me. That's why I was more nervous to work with these people." Defense counsel asked to approach the bench, but the court immediately instructed the jury to disregard the answer. It later denied a defense motion for a mistrial.

The denial of a mistrial is reviewed for abuse of discretion, and none has been shown in this instance. See United States v. Hale, 1 F.3d 691, 694 (8th Cir. 1993). Defense counsel brought out the testimony on gang affiliation through its questioning of Schroeder. See United States v. Hall, 109 F.3d 1227, 1231-32 (7th Cir.), cert. denied, 118 S.Ct. 153 (1997). The government did not breach its agreement, and no other mention was made of gangs at trial, and the district court instructed the jury to disregard the testimony. See United States v. Muza, 788 F.2d 1309, 1312 (8th Cir. 1986).

Gadison claims in addition that the district court committed plain error and denied his rights to a fair trial and assistance of counsel by refusing to allow the attorneys to approach the bench during Schroeder's testimony. The district court has wide discretion in managing a trial, and it did not act inappropriately under these circumstances. It immediately advised the jury to disregard Schroeder's remark and later fully considered the defense arguments for a mistrial outside the presence of the jury. Gadison's constitutional rights were not denied by failure to hold an instant bench conference.

**D.**

Puckett argues that the district court erred by allowing the government to recall law enforcement witnesses during the course of trial so that the evidence could be presented in chronological order. Puckett says that this procedure lent undue credibility to their testimony and interfered with effective cross examination. A trial court has discretion to exercise control over the order of interrogating witnesses to "make the interrogation and presentation effective for the ascertainment of truth," Fed. R. Evid. 611, and no reversal is warranted unless an abuse of discretion affects the substantial rights of the parties. See United States v. Dolan, 120 F.3d 856, 869 (8th Cir. 1997); United States v. Triplett, 104 F.3d 1074, 1078 (8th Cir.), cert. denied, 117 S.Ct. 1837 (1997). The witnesses testified about different subject matter each time they were called to the stand, the defendants were free to cross examine them about any of their testimony, and there is no indication that the government recalled the witnesses to bolster their credibility. While it may be preferable to have witnesses testify in a less interrupted manner, we cannot say the district court abused its discretion. See United States v. DeLuna, 763 F.2d 897, 911-12 (8th Cir. 1985).

**E.**

Gadison says that his convictions on counts 1, 2, and 3 should be reversed because the government called Jessica Mitchell to testify before the grand jury after the indictment against him had been filed. She was allowed to testify at trial over his objection, and he argues that the grand jury was used as a discovery tool in violation of the fifth amendment. See United States v. Doss, 545 F.2d 548 (6th Cir. 1976). In order to obtain reversal on this ground Gadison must establish that Mitchell was summoned before the grand jury "for the sole or dominant purpose of preparing a pending indictment for trial." United States v. Gibbons, 607 F.2d 1320, 1328 (10th Cir. 1979); see United States v. Breitkreutz, 977 F.2d 214, 217 (6th Cir. 1992). Mitchell testified at trial that she was called before the grand jury to provide

information about the drug activity of an individual who was not a defendant in the case. During the course of her grand jury testimony, she also indicated that she had purchased crack from some of the defendants. There is no indication that the primary purpose of Mitchell's grand jury testimony was to obtain additional evidence against these defendants, and Gadison has thus failed to establish an abuse of the grand jury process. See Breitkreutz, 977 F.2d at 217.

**F.**

Harper argues that the court erred by denying his motion for a new trial based on newly discovered evidence and his motion to dismiss the indictment because of false testimony before the grand jury. Prior to trial the government turned over LeShawn Coleman's grand jury testimony which included statements that Coleman had gone to Davenport to pick up drugs with Harper, Gadison and Sparlin. At trial the government disclosed statements by Sparlin which contradicted this testimony about the drug trips. Harper and Gadison moved for a new trial based on the late disclosure of Sparlin's statements and for dismissal of the indictment because it rested on Coleman's false testimony. The court denied the motion for a new trial because the evidence was available during trial, the defendants had failed to show diligence in obtaining it earlier, the evidence was cumulative as shown by the thorough cross examination of Coleman, and its earlier production would not likely have led to an acquittal. See United States v. Luna, 94 F.3d 1156, 1161 (8th Cir. 1996). The court also denied the motion to dismiss because it was not shown that the indictment was based on perjured testimony and because the fact that there was a conflict between witnesses did not in itself undermine probable cause. Harper now renews his contentions that Sparlin's statements were disclosed too late to be of use as impeachment evidence against Coleman and that his due process rights were violated because the indictment was based on testimony the government knew to be false, citing United States v. Basurto, 497 F.2d 781 (9th cir. 1974). After examining the record, including the admissions of the defendants about possessing Sparlin's statements at trial, we find neither an abuse

of discretion in the denial of the motion for a new trial, see United States v. Caldwell, 83 F.3d 954, 955 (8th Cir. 1996), nor any constitutional violation in declining to dismiss the indictment.

## III.

### A.

Redmond argues that he is entitled to resentencing because the district court erred in its findings on the amount of drugs for which he was held responsible. See United States v. Olderbak, 961 F.2d 756, 763-64 (8th Cir. 1992). The district court indicated it based its finding that the conspiracy involved 1 kilogram of crack cocaine on the length of the conspiracy, each defendant's involvement in the conspiracy, the street value of crack, the results of surveillance, and the amounts seized. See USSG § 2D1.1, comment.( n. 12). Evidence at trial showed that the conspirators were dealing large amounts of crack over an extended period of time and that Redmond was significantly involved in the conspiracy, had large amounts of cash, and left a supply of drugs for dealing at an acquaintance's residence. The findings on quantity were not clearly erroneous. See United States. v. Flores, 73 F.3d 826, 833 (8th Cir. 1996).

### B.

Harper challenges the four point enhancement he received for his leadership role. See USSG § 3B1.1. Findings on role in the offense are reviewed for clear error. See United States v. McCarthy, 97 F.3d 1562, 1579 (8th Cir. 1996), cert. denied, 117 U.S. 1011 (1997). Trial testimony established that Harper oversaw the whole operation, that he directed the procurement of drugs, that he received the proceeds of drug sales by coconspirators, that he recruited Coleman to sell crack for him, and that Gadison had to go through Harper before he could make any decisions for the conspirators. There was therefore no clear error in the sentence enhancement.

## C.

Sparlin attempts to challenge the extent of the district court's downward departure in her sentencing. She initially received a sentence of 61 months. A three level reduction for being coerced had resulted in a guidelines range of 121-151 months, from which the district court departed downward for substantial assistance. Since the parties had neglected to inform the court about a stipulation affecting the sentence, the court reconvened the hearing and then imposed a sentence of 57 months. Sparlin was again granted a reduction for coercion and a downward departure for her assistance, but the coercion reduction was reduced from three to two levels and the departure granted was 40 months below the new guidelines range. Sparlin argues that she is entitled to the same number of months departure as she originally received, that is a 60 month departure instead of 40 months. We have no jurisdiction to consider this argument, however, because the extent of a downward departure is unreviewable on appeal. See United States v. Goodwin, 72 F.3d 88, 91 (8th Cir. 1995); United States v. Albers, 961 F.2d 710, 712 (8th Cir. 1992).

## IV.

We conclude that the evidence was sufficient to support the convictions and that the district court did not err by refusing to suppress Simmons' identification or to grant the motions made by appellants. We also find no sentencing errors. We therefore affirm the judgments.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.