# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2316

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff-Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the Northern |
| | * District of Iowa. |
| Kevin Michael Thurmon, | * |
| | * |
| Defendant-Appellant. | * |

_____

Submitted: February 11, 2004
Filed: May 12, 2004

_____

Before MELLOY, SMITH, and COLLOTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

Kevin Thurmon plead guilty to one count of Distribution of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). The district court[1] sentenced Mr. Thurmon to 210 months imprisonment. Mr. Thurmon appeals his conviction and sentence, alleging that the district court erred in denying his motions to continue trial and withdraw his plea, and his attorney's motion to withdraw as counsel. Mr.

_____

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

Thurmon also contends the district court erred in denying a downward departure pursuant to U.S.S.G. § 3B1.2(b) for his role in the offense. We affirm.

## I.    BACKGROUND

The facts giving rise to Mr. Thurmon's underlying conviction are set forth in his presentence investigation report and are not in dispute on appeal. These facts are as follows:

> On February 20, 2002, a confidential informant placed a recorded call to [Mr. Thurmon] to arrange for a purchase of one-half ounce of crack cocaine for $700. The confidential informant subsequently met with [Mr. Thurmon] at his residence, 1136 Locust Street in Dubuque, Iowa. Daimysei Jasper was present in [Mr. Thurmon's] residence but left soon after their arrival. [Mr. Thurmon] then took the confidential informant to 243 West 11th Street to meet with Jasper and to conduct the drug transaction. Jasper sold the confidential informant one-half ounce of cocaine base or crack cocaine for $700. The substance purchased was determined . . . to be 12.78 grams of cocaine base . . . .

> On April 9, 2002, Iowa Department of Narcotics Enforcement Special Agent Mower placed a recorded call to [Mr. Thurmon] to arrange a purchase of one ounce of crack cocaine for $1100. Special Agent Mower subsequently met with [Mr. Thurmon] at his residence . . . . At around 5:20 p.m., Ricky Carter arrived at [Mr. Thurmon's] residence. Carter showed Special Agent Mower one ounce of crack cocaine and stated that he had just cooked it up. Special Agent Mower then handed [Mr. Thurmon] $1,100 in U.S. currency, and Carter handed the crack cocaine to Special Agent Mower. [Mr. Thurmon] then handed the money to Carter. Special Agent Mower weighed the crack cocaine and then asked for $100 back because the weight was light. Carter gave Special Agent Mower $100 back. Carter told the agent that he would

get him a quarter ounce more the next time they met. The substance . . . was determined to be 19.62 grams of cocaine base.

Presentence Investigation Report at ¶¶ 14-15.

The government charged Mr. Thurmon with distribution of cocaine base and use of a telephone to facilitate the distribution of cocaine base. Trial was originally set for October 1, 2002. However, it was delayed until January 6, 2003, as a result of three motions to continue. In each of these unresisted motions, Mr. Thurmon's lawyer, Scott Peterson, stated that he needed additional preparation time.

On December 16, 2002, Mr. Peterson filed a fourth motion to continue trial to February 1, 2003. Mr. Peterson informed the district court that he had recently received 1000 pages of medical records he had requested some time earlier. Mr. Peterson stated that he wanted to examine the medical records so that he could properly advise Mr. Thurmon on whether Mr. Thurmon should proceed to trial or attempt to negotiate a plea with the government. Mr. Peterson advised the district court that the parties were engaged in ongoing plea negotiations and were fairly confident a plea agreement could be reached. He stated that the contents of the medical records would assist the parties in finalizing the plea offer.

Before the district court ruled on the motion to continue, Mr. Peterson informed the district court that personal family obligations rendered him unable to properly prepare for trial. Specifically, he advised that his widowed mother was scheduled for surgeries on January 6th and 13th, 2003. Because Mr. Peterson was the only immediate family member available in the state to assist his mother, he did not believe he could focus his full attention on Mr. Thurmon's case.

The district court denied the motion to reschedule trial to February. Instead, it offered to delay trial by two days. Shortly after receiving the district court's denial,

Mr. Thurmon entered into a plea agreement with the government. On January 9, 2003, Mr. Thurmon appeared before a United States Magistrate Judge and plead guilty to distribution of cocaine base. The district court accepted Mr. Thurmon's plea on January 27, 2003.

Mr. Peterson negotiated substantial benefits for Mr. Thurmon in the plea agreement. The parties stipulated to a base offense level using 32.4 grams of cocaine base. This quantity did not include five grams of cocaine authorities found in Mr. Thurmon's possession while he was on pretrial release.[2] The government agreed not to seek the statutory penalties of 21 U.S.C. § 841(b)(1)(B) and not to file additional drug-related criminal charges against Mr. Thurmon.[3] In addition, the parties agreed to a two-level reduction pursuant to U.S.S.G. § 3E1.1 for Mr. Thurmon's acceptance of responsibility, and Mr. Thurmon reserved his right to request from the court a three-level reduction on that basis. Defendant also reserved the right to seek a downward departure based upon his medical condition and to contest the application of the protected location statute and guideline.

At the April 10, 2003 sentencing hearing, Mr. Peterson made a motion to withdraw the guilty plea and a motion to withdraw as counsel. The district court continued the sentencing to allow the parties to brief these issues. On April 17, 2003, the district court held a hearing on these motions, but Mr. Thurmon failed to appear. Following Mr. Thurmon's arrest for failing to appear, the district court held another

---

[2] We note that the government did not charge Mr. Thurmon for committing a drug crime while on pretrial release in violation of 18 U.S.C. § 3147.

[3] The statutory penalty under 21 U.S.C. § 841(b)(1)(B) included a five-year mandatory minimum sentence. Although the anticipated guideline sentencing range was expected to exceed sixty months, this concession would have allowed the district court to depart all the way to a sentence of probation if the medical departure was granted. This was an important concession to Mr. Thurmon because of his belief that his medical condition warranted a substantial departure.

hearing on these motions. Mr. Peterson argued that the district court's previous refusal to grant a continuance rendered him ineffective. He claimed that as a result of his ineffectiveness, Mr. Thurmon was not able to enter into the plea agreement intelligently, knowingly, and voluntarily. The district court denied both the motion to withdraw the guilty plea and the motion for Mr. Peterson to withdraw as counsel.

At Mr. Thurmon's subsequent sentencing hearing, the district court applied a guideline enhancement for obstruction of justice due to Mr. Thurmon's failure to appear at the April 17th hearing. The district court denied a reduction for acceptance of responsibility, denied Mr. Thurmon's request for a reduction based on a mitigating role in the offense, and declined to depart downward based on Mr. Thurmon's medical condition. The district court sentenced Mr. Thurmon to 210 months imprisonment, a four-year term of supervised release, and a mandatory special assessment of $100. Mr. Thurmon now appeals.

II.    APPLICABLE LAW AND DISCUSSION

A. Motion to Continue

Mr. Thurmon contends the district court erred in denying his motion to continue trial. "We will reverse a district court's decision to deny a motion for continuance only if the court abused its discretion and the moving party was prejudiced by the denial." United States v. Cotroneo, 89 F.3d 510, 514 (8th Cir. 1996). In this case, we need not determine whether the district court's unwillingness to grant Mr. Thurmon's unresisted continuance reached the level of an abuse of discretion, because Mr. Thurmon failed to show that he suffered prejudice.

As set forth above, Mr. Peterson reserved rights for Mr. Thurmon and obtained concessions from the government in the plea agreement. Mr. Thurmon contends that if Mr. Peterson would have had an opportunity to more thoroughly review the medical

records, Mr. Thurmon's bargaining power would have been enhanced and he would have received a more favorable plea agreement. We are not persuaded. The medical records pertained to sentencing issues only, not Mr. Thurmon's guilt or innocence. Furthermore, the plea agreement reserved Mr. Thurmon's right to seek a downward departure based upon his medical condition.[4]

Mr. Thurmon argues that Mr. Peterson's personal family issues hampered Mr. Peterson's ability to advise whether to plead or go to trial. Although Mr. Peterson faced competing obligations due to his mother's medical condition, Mr. Thurmon failed to show that Mr. Peterson rendered ineffective legal services. To the contrary, we find that Mr. Peterson effectively represented Mr. Thurmon's legal interests by obtaining a favorable plea agreement. See Taylor v. Bowersox, 329 F.3d 963, 972-73 (8th Cir. 2003) (finding that a lawyer who was fired from the public defender's office and who allegedly had to devote time to finding a new job nevertheless provided defendant with adequate representation). We note that at the time Mr. Peterson requested the fourth continuance, he informed the court that Mr. Thurmon and the government had engaged in plea negotiations and that trial was unlikely. We cannot say that Mr. Thurmon suffered prejudice from the district court's refusal to grant a continuance.

---

[4]The district court did not sentence Mr. Thurmon until April 10, 2003. Mr. Thurmon does not allege that Mr. Peterson failed to properly review the medical records before his sentencing, nor does he appeal the district court's refusal to depart downward for a medical condition under U.S.S.G. § 5H1.4. Mr. Thurmon has a serious kidney disease and is on dialysis, which is the reason he was allowed to remain on pre-trial release after his guilty plea. Mr. Peterson did a very thorough job of presenting the medical case for departure, including the calling of Mr. Thurmon's attending physician as a witness.

B. Motions to Withdraw Plea and Withdraw as Counsel

Mr. Thurmon raises essentially the same arguments in support of his challenge to the district court's denial of the motion to withdraw the guilty plea and Mr. Peterson's motion to withdraw as counsel. Because we find that Mr. Peterson provided sufficient representation, we affirm the district court's denials of these motions.

C. Role in the Offense Adjustment

We next consider whether the district court erred in denying Mr. Thurmon's request for a downward adjustment pursuant to U.S.S.G. § 3B1.2 for his role in the offense. United States Sentencing Guideline § 3B1.2 provides for a two or four level reduction in a defendant's offense level if the defendant was a "minor" or "minimal" participant in the criminal activity. These reductions are applicable "for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2, cmt. n.3(A). "Whether a defendant qualifies for a [role reduction] is a question of fact, the determination of which we review for clear error." United States v. Hale, 1 F.3d 691, 694 (8th Cir. 1993).

The uncontested facts show that on two separate occasions Mr. Thurmon arranged for the sale of crack to a confidential informant and an undercover agent. Mr. Thurmon did not merely tell prospective buyers where they could obtain drugs; he escorted a confidential informant to a seller's apartment where the confidential informant purchased drugs, and he arranged for an undercover agent to make a drug purchase at his residence. Nothing in the record suggests that these transactions would have occurred but for Mr. Thurmon's involvement. Under these circumstances, we cannot say the district court clearly erred in denying Mr.

Thurmon's request for a reduction pursuant to U.S.S.G. § 3B1.2.[5]  See Hale, 1 F.3d at 694-95 (affirming the denial of a minor participant reduction where a defendant informed a buyer where to purchase drugs and accompanied the buyer to an apartment to purchase drugs).

  We affirm the judgment and sentence of the district court.

_____

[5]Although at sentencing the district court did not explicitly state its ground for denying an adjustment under U.S.S.G. § 3B1.2, it appears the district court adopted the prosecutor's argument that Mr. Thurmon's involvement in the offense was critical.